1        **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

4

5    NEW TRADITION MEDIA, LLC,        )   NO. CV 2022-08670-SVW-AS
                                       )
6                    PLAINTIFF,        )
                                       )
7              VS.                     )
                                       )
8    RITTERSBACHER SUNSET, LLC, ETC., )
     ET AL.,                          )
9                                      )
                     DEFENDANTS.       )
10   _____)

11

12            **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
                      **STATUS CONFERENCE**
13             **MONDAY, FEBRUARY 13, 2023**
                       **2:24 P.M.**
14             **LOS ANGELES, CALIFORNIA**

15

16

17   _____

18

19             **GAYE L. LIMON, CSR NO. 7416**
        FEDERAL OFFICIAL PRO TEMPORE COURT REPORTER
20                LIMONCSR@GMAIL.COM

21

22

23

24

25

```
 1      APPEARANCES:

 2      FOR THE PLAINTIFF:        AKERMAN LLP
                                  BY:  KANIKA D. CORLEY, ESQ.
 3                                     KANIKA.CORLEY@AKERMAN.COM
                                       ALICIA Y. HOU, ESQ.
 4                                     ALICIA.HOU@AKERMAN.COM
                                  601 WEST FIFTH STREET
 5                                SUITE 300
                                  LOS ANGELES, CALIFORNIA 90071
 6

 7      FOR THE DEFENDANT:        DAPEER, ROSENBLIT & LITVAK, LLP
                                  BY:  WILLIAM LITVAK, ESQ.
 8                                     WLITVAK@DRLLAW.COM.
                                       ERIC P. MARKUS, ESQ.
 9                                     EMARKUS@DRLLAW.COM
                                  11500 WEST OLYMPIC BOULEVARD
10                                SUITE 550
                                  LOS ANGELES, CALIFORNIA 90064
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    M A S T E R   I N D E X

2                     FEBRUARY 13, 2023

3

4        CHRONOLOGICAL AND ALPHABETICAL INDEX OF WITNESSES

5                            NONE

6

7                          EXHIBITS

8                       NONE OFFERED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1                MONDAY, FEBRUARY 13, 2023; 2:24 P.M.

 2                    LOS ANGELES, CALIFORNIA

 3

 4                           -OOO-

 5

 6        THE CLERK:  ITEM 6CV22-8670-SVW, NEW TRADITION MEDIA

 7   LLC VERSUS RITTERSBACHER SUNSET LLC.

 8                COUNSEL, PLEASE STATE YOUR APPEARANCES.

 9        MS. CORLEY:  GOOD AFTERNOON, YOUR HONOR.  KANIKA CORLEY

10   HERE ON BEHALF OF PLAINTIFF NEW TRADITION MEDIA.

11        MS. HOU:  GOOD AFTERNOON, YOUR HONOR.  ALICIA HOU ALSO

12   APPEARING FOR PLAINTIFF NEW TRADITION MEDIA.

13        MR. MARKUS:  GOOD MORNING, YOUR HONOR -- GOOD

14   AFTERNOON, YOUR HONOR.  ERIC MARKUS FOR RITTERSBACHER SUNSET.

15            IF I MAY, LEAD COUNSEL STEPPED OUT BRIEFLY.  MAY

16   I GO FIND HIM?

17        THE COURT:  WHAT WAS THAT?

18        MR. MARKUS:  LEAD COUNSEL FOR MY CLIENT JUST STEPPED

19   OUT.

20        THE COURT:  CAN YOU GET HIM.

21        MR. MARKUS:  THANK YOU.

22        THE COURT:  OR HER.

23

24            (BRIEF PAUSE.)

25
```

1          THE COURT:  STATE YOUR APPEARANCES, PLEASE.

2          MR. LITVAK:  GOOD AFTERNOON, YOUR HONOR.  WILLIAM

3     LITVAK FOR THE DEFENDANT.  AND WITH ME IS ERIC MARKUS.

4          THE COURT:  ALL RIGHT.  THIS IS A STATUS CONFERENCE,

5     AND IT IS DESIGNED JUST TO GIVE THE COURT SOME MORE

6     BACKGROUND ABOUT THE CASE BEYOND THE PLEADINGS.  AT THIS

7     POINT, OF COURSE, THE COURT KNOWS LITTLE ABOUT THE CASE; SO

8     I'LL INVITE THE PLAINTIFF TO SORT OF GIVE ME AN OVERVIEW OF

9     WHAT THE CLAIMS ARE.

10         MS. CORLEY:  THANK YOU, YOUR HONOR.  PLAINTIFF BROUGHT

11    THIS ACTION HERE FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF

12    REGARDING COPYRIGHT INFRINGEMENTS.  PLAINTIFF HAS A

13    REGISTERED COPYRIGHT.  DEFENDANT WAS SELLING COMMERCIAL

14    PROPERTY, UTILIZED THAT REGISTERED COPYRIGHT WITHIN ITS

15    OFFERINGS, WITHIN ITS MARKETING MATERIALS.

16         THE COURT:  WHAT IS THE COPYRIGHT?

17         MS. CORLEY:  THE COPYRIGHT INCLUDES TECHNICAL DRAWINGS

18    OF ARCHITECTURAL RENDERINGS AS WELL AS 2D PROTECTED WORKS.

19         THE COURT:  WHAT ARE 2D -- I'M NOT SURE -- CAN YOU TELL

20    ME WHAT THAT IS?

21         MS. CORLEY:  SURE.  2D, TWO DIMENSIONAL.

22         THE COURT:  OH, TWO DIMENSIONAL, I SEE.

23         MS. CORLEY:  IT IS JUST A PHOTOGRAPH.  AND THEN

24    TECHNICAL DRAWINGS ARE MORE THAN THAT.  IT IS ARCHITECTURAL

25    RENDERINGS.

```
1         THE COURT:  TELL ME A LITTLE BIT ABOUT WHAT THE
2   PLAINTIFF DOES AND HOW IT USES THIS AND WHAT THE BUSINESS OF
3   THE PLAINTIFF IS AND HOW THE DEFENDANT IS USING IT AND WHAT
4   BUSINESS THEY'RE IN.  THAT WOULD HELP ME BETTER UNDERSTAND.
5         MS. CORLEY:  SURE, YOUR HONOR.  SO THE PLAINTIFF IS IN
6   THE BUSINESS OF PLACING ADVERTISEMENTS ON BILLBOARDS.  THE
7   PLAINTIFF REGISTER -- OR APPLIED FOR WHAT WE CALL A "CONCEPT
8   AWARD" THROUGH THE CITY OF WEST HOLLYWOOD TO HAVE A STATIC
9   BILLBOARD, WHICH IS YOUR REGULAR BILLBOARD, WHERE THE WORK IS
10  PLACED ON THAT STATIC FRAME, CHANGED OVER INTO A DIGITAL
11  BILLBOARD SO THAT THE FRAME WILL CHANGE EVERY FEW SECONDS OR
12  SO.  AND SO THE DEFENDANTS --
13        THE COURT:  THAT'S DESIGNED, OF COURSE, TO DISTRACT
14  DRIVERS; CORRECT?
15        MS. CORLEY:  I DO NOT KNOW THE PURPOSE OF THE DESIGN,
16  YOUR HONOR.  ALL I KNOW IS THAT MY CLIENT DID APPLY FOR
17  ONE --
18        THE COURT:  YES.
19        MS. CORLEY:  -- AND RECEIVED WHAT WE CALL A "CONCEPT
20  AWARD."  THAT CONCEPT AWARD GAVE THE ABILITY OF THE OWNER TO
21  THEN REMOVE THE STATIC BILLBOARD AND REPLACE IT WITH THE
22  DIGITAL BILLBOARD UPON FURTHER APPLICATION TO THE CITY OF
23  WEST HOLLYWOOD.
24        THE COURT:  WHAT EXACTLY IS THE COPYRIGHT?
25        MS. CORLEY:  THE COPYRIGHT IS THE UNDERLYING
```

1    APPLICATION -- THE COPYRIGHTABLE ASPECTS OF THE UNDERLYING

2    APPLICATION, WHICH IS AN EXHIBIT TO OUR COMPLAINT.  I DON'T

3    KNOW IF YOUR HONOR HAS OUR COMPLAINT.

4         THE COURT:  I DON'T HAVE IT BEFORE ME.  MAYBE --

5         MS. CORLEY:  THEY ARE THE ARCHITECTURAL RENDERINGS OF

6    WHAT THE DIGITAL BILLBOARD WILL LOOK LIKE, THE OVERALL

7    CONCEPT THAT THE CITY OF WEST HOLLYWOOD WANTED TO SEE JUST

8    THOSE COPYRIGHTABLE ASPECTS OF WHAT WAS PRESENTED.

9         THE COURT:  I'M SAYING THIS WITHOUT ANY REAL

10   BACKGROUND, BUT IT SOUNDS LIKE IT'S MORE LIKE A PATENT.  IS

11   IT?

12        MS. CORLEY:  IT IS NOT A PATENT, YOUR HONOR.  IT IS THE

13   ACTUAL ARCHITECTURAL RENDERINGS OF WHAT THE DIGITAL BILLBOARD

14   WILL LOOK LIKE THAT WE SUBMITTED FOR COPYRIGHT PROTECTION.

15        THE COURT:  I SEE.  DESIGN.

16        MS. CORLEY:  THE DESIGN, YOUR HONOR, YES.

17        THE COURT:  I JUST GOT A LITTLE CAUGHT UP IN THE -- THE

18   CHANGE IN THE BILLBOARD, THE FUNCTION.  THAT ISN'T PART OF

19   THE COPY --

20        MS. CORLEY:  THAT IS NOT PART OF THE COPYRIGHT, YOUR

21   HONOR.

22        THE COURT:  I SEE.  ALL RIGHT.  AND SO HOW -- WHAT --

23   SO YOUR CLIENT IS IN THE BUSINESS OF DESIGNING THESE

24   BILLBOARDS?

25        MS. CORLEY:  MY CLIENT IS IN THE BUSINESS OF PLACING

```
1    THE ADVERTISEMENTS ONTO THE BILLBOARDS THEMSELVES, HAS THE

2    RELATIONSHIP WITH THE COMPANIES WHO WOULD SEEK TO HAVE THEIR

3    NAME PLACED ON A BILLBOARD.

4        THE COURT:  SO YOUR COMPANY MAKES ITS REVENUE FROM --

5    EXCUSE ME -- ADVERTISERS WHO USE THE SERVICES OF YOUR CLIENT

6    TO DESIGN THESE BILLBOARDS; IS THAT RIGHT?

7        MS. CORLEY:  YES, YOUR HONOR.

8        THE COURT:  AND IN THE DESIGN -- IS THIS A DESIGN FOR A

9    PARTICULAR ADVERTISEMENT, OR IS IT A MORE OR LESS REGIMENTED

10   DESIGN THAT CAN BE INTERPOSED WITH DIFFERENT ADVERTISERS?

11       MS. CORLEY:  THE LATTER, YOUR HONOR.

12       THE COURT:  LATTER.  SO IT'S SORT OF A TECHNIQUE, THEN?

13       MS. CORLEY:  IT IS THE DESIGN OF A DIGITAL BILLBOARD,

14   THE CONCEPT OF WHICH HAS BEEN APPROVED BY OR PARTIALLY

15   APPROVED BY THE CITY OF WEST HOLLYWOOD AS SOMETHING THAT THEY

16   WOULD LIKE TO SEE ON THAT PROPERTY --

17       THE COURT:  I SEE.

18       MS. CORLEY:  -- THE PROPERTY OWNED BY THE DEFENDANTS.

19       THE COURT:  OH.

20       MS. CORLEY:  SO THE ISSUE HERE, YOUR HONOR --

21       THE COURT:  GO AHEAD.

22       MS. CORLEY:  -- IS THAT THE PLAINTIFF HAS THE

23   REGISTERED COPYRIGHTS, AND THE DEFENDANT WAS SELLING ITS

24   COMMERCIAL PROPERTY ON WHICH THAT BILLBOARD WOULD ULTIMATELY

25   SIT, AND WITHIN ITS MATERIALS, ITS WEBSITE MATERIALS, SET
```

1   FORTH THAT THE BUYER OF THAT PROPERTY COULD, WITH THIS

2   CONCEPT AWARD THAT MY CLIENT ACQUIRED, UTILIZED THAT TO

3   CREATE THE DIGITAL BILLBOARD, WHICH IS ACTUALLY BASED ON THE

4   COPYRIGHTED CONCEPT OR THE COPYRIGHTED DESIGN.

5           THE COURT:  I SEE.  OKAY.  YOU EXPLAINED YOUR PART OF

6   IT.  LET ME HEAR FROM THE DEFENDANT.

7           MR. LITVAK:  GOOD AFTERNOON, YOUR HONOR.  TRYING NOT TO

8   BE PEJORATIVE, THIS CASE IS NOT A COPYRIGHT CASE.  IT IS A

9   DELUSION OR ILLUSION, DEPENDING UPON YOUR PERSPECTIVE; BUT IT

10  IS REALLY PART OF AN OVERALL SCHEME TO INTERFERE WITH THE

11  SALE OF THE SUBJECT PROPERTY.

12          NOW, BEFORE I GO INTO THE DETAILS, I THINK

13  THERE'S SOMETHING THAT THE PLAINTIFF MAY HAVE OVERLOOKED IN

14  LETTING YOU KNOW.  WE'VE BEEN HAVING CONVERSATIONS IN THE

15  LAST WEEK OR SO, THE SUBJECT OF WHICH HAS BEEN THAT THE SALE

16  HAS CONCLUDED AND MY CLIENT IS NO LONGER THE OWNER OF THE

17  PROPERTY.  AND BASED UPON THAT, WE BELIEVE THAT, REGARDLESS

18  OF THE MERITS OF THE CASE, IT IS NOW ESSENTIALLY MOOT BECAUSE

19  THEY'RE ASKING FOR A DECLARATION TO GET US TO NOT DO

20  SOMETHING THAT WE NO LONGER HAVE THE CAPABILITY OF DOING IN

21  ANY EVENT.

22          NOW, TAKING A STEP BACK TO THE BEGINNING, MY

23  CLIENT HAS OWNED THIS PIECE OF PROPERTY FOR MANY, MANY YEARS

24  AS A GROUND LESSOR.  THERE WAS SIGNIFICANT LITIGATION WITH

25  THE TENANT OF THAT PROPERTY THAT IS NOT PERTINENT TO THIS,

1    BUT IT REGAINED POSSESSION OF THE PROPERTY.  AND AFTER IT

2    REGAINED POSSESSION OF THE PROPERTY, IT LEARNED ABOUT THE

3    EXISTENCE OF THE -- OF A SUBTENANT, WHICH WAS THE BILLBOARD

4    COMPANY, THAT HAD BEEN OBTAINED FROM THE SUB-SUBLESSEE.  WE

5    DID NOT KNOW ABOUT THEIR EXISTENCE.

6              THE WAY THAT MY CLIENT FOUND OUT ABOUT IT IS,

7    AFTER THE PLAINTIFF'S PARTNER, OSIK, WHO IS NOT A PARTY TO

8    THIS CASE FOR REASONS THAT I CAN'T FATHOM, HAD APPLIED AND

9    MISREPRESENTED TO THE CITY THAT THE SUBLESSOR WAS THE OWNER

10   OF THE PROPERTY WHEN IN REALITY RITTERSBACHER OWNED THE

11   PROPERTY.  THE SIGNIFICANCE OF THIS IS THAT LAND ENTITLEMENTS

12   DO NOT BELONG TO ANY TENANT, DO NOT BELONG TO ANY INTERLOPER.

13   THEY ARE EXCLUSIVELY THE PROPERTY OF THE PROPERTY OWNER KNOWN

14   AS "RUNNING WITH THE LAND."  WHOEVER OWNS THE LAND, GETS THE

15   ENTITLEMENT.  AND THE THEORETICAL BASIS FOR THAT IS YOU DON'T

16   WANT TO HAVE ENTITLEMENTS BE CHOSE AS AN ACTION TO BE TRADED

17   BECAUSE THEY ARE PART OF A STATUTORY SCHEME BY LOCAL

18   GOVERNMENT TO CONTROL HOW THEIR PROPERTY'S BEING USE.

19             WHEN IT WAS LEARNED ABOUT THIS APPLICATION THAT

20   HAD BEEN FILED ALONG WITH THE SCHEMATIC -- AND, BY THE WAY,

21   THERE'S NO PLANS IN THERE.  IT IS A VERY ROUGH SCHEMATIC --

22   WHEN THAT WAS LEARNED -- WHEN IT WAS DISCOVERED THAT THEY HAD

23   FILED THIS APPLICATION FRAUDULENTLY TO THE CITY, THE CITY

24   THEN WENT TO MY CLIENT --

25             THE COURT:  I WANT TO MAKE SURE I'M FOLLOWING.  WHO

1    FILED THIS APPLICATION?

2         MR. LITVAK:  IT WAS NOT THE PLAINTIFF IN THIS CASE.  IT

3    WAS THE PLAINTIFF'S OSTENSIBLE PARTNER, OSIK MEDIA, WHO HAD

4    ACTUALLY NEGOTIATED FOR AN ILLEGAL SUBLEASE ON THE PROPERTY.

5         THE COURT:  IS OSIK -- IF THAT'S HOW YOU SAY IT -- AN

6    ADVERTISING COMPANY?

7         MR. LITVAK:  THEY OWN THE BILLBOARD.  THE BUSINESS OF

8    THE PLAINTIFF IS NOT TO CONSTRUCT OR DESIGN BILLBOARDS.  IT

9    IS SIMPLY TO PLACE ADVERTISING UPON THEM.  THEIR ONLY

10   CONNECTION TO THIS BILLBOARD IS A YET UNSEEN ASSIGNMENT BY

11   OSIK AND THE ARCHITECT.  WE HAVE NOT BEEN PROVIDED WITH A

12   COPY OF THAT YET; SO WE CAN'T EVEN VALIDATE THAT THEY ARE

13   PROPER PLAINTIFFS IN THE FIRST INSTANCE.

14        BUT WHEN IT WAS DISCOVERED THAT THIS APPLICATION

15   HAD BEEN MADE AND, IN FACT, HAD BEEN APPROVED, THE CITY THEN

16   WENT AND STARTED DEALING EXCLUSIVELY WITH MY CLIENT.

17        NOW, THERE'S SOMETHING VERY IMPORTANT YOU HAVE TO

18   UNDERSTAND ABOUT THESE AWARDS.  THEY'RE NOT AWARDS.  THEY

19   DON'T GIVE YOU ANYTHING.  THEY'RE BASICALLY BEAUTY CONTESTS

20   WHERE THE CITY THEN SELECTS A GROUP OF POTENTIAL BILLBOARD

21   PROPONENTS AND GIVES THEM AN OPPORTUNITY TO REQUEST

22   PERMISSION TO BUILD THIS DIGITAL DISPLAY BILLBOARD; SO THE

23   AWARD ITSELF IS MERELY AN OKAY TO GO TO THE NEXT STEP.

24        BUT THE SIGNIFICANCE TO THIS AWARD IS THAT IN THE

25   COMPLAINT THE PLAINTIFF EXPRESSLY DISAVOWS ANY OWNERSHIP

1    INTEREST IN THE AWARD.  I WANT TO REPEAT THAT.  THE AWARD IS

2    WHAT ALLOWS SOMEBODY TO GO TO THE NEXT STEP.  THEY ARE NOT

3    SUING ON THAT AWARD.  THEY SAY THEY HAVE NO INTEREST IN THAT

4    AWARD.  WHAT THEY'RE SAYING IS THAT THE PHOTOGRAPH OR THE

5    DESIGN OR DRAWING THAT WAS ATTACHED TO THE APPLICATION

6    SOMEHOW IS A COPYRIGHTED MATERIAL THAT WE ARE USING.  ARE WE

7    USING IT FOR ADVERTISING?  NO.  ARE WE USING IT FOR BUILDING

8    A BILLBOARD?  NO.

9              IN DUE DILIGENCE, AS PART OF THE DUE DILIGENCE

10   PROCESS TO SOLICIT OFFERS TO BUY, A NUMBER OF DOCUMENTS WERE

11   PROVIDED TO POTENTIAL PURCHASERS WHO ALL SIGNED NDAs; AND

12   THE INFORMATION INCLUDED A COPY OF THE TITLE POLICY, INCLUDED

13   A COPY OF SOME PERMITS, INCLUDED A SURVEY, INCLUDED A PHASE 1

14   ENVIRONMENTAL REPORT, AND INCLUDED A COPY OF WHAT WAS FILED

15   WITH THE CITY.  WE WERE NOT SELLING BILLBOARDS.  WE WEREN'T

16   TRYING TO MAKE MONEY OFF OF THE DESIGN.  ALL THAT WAS BEING

17   DONE WAS DISCLOSURE TO THIRD PARTIES ABOUT WHAT THE STATUS,

18   THE LEGAL STATUS, OF THE PROPERTY WAS.

19              WE COULDN'T VERY WELL --

20        THE COURT:  LET ME JUST STOP YOU A MINUTE.  IT SEEMS

21   LIKE WHAT YOU ARE REALLY CONTENDING THAT, ASSUMING THERE WAS

22   A COPYRIGHT, THAT YOUR CLIENT'S USE OF THE COPYRIGHT WAS NOT

23   AN UNLAWFUL USE.

24        MR. LITVAK:  NOT ONLY THAT, YOUR HONOR --

25        THE COURT:  LET'S --

```
1            MR. LITVAK:  YES.

2            THE COURT:  -- NOT GET TO "NOT ONLY."  I MEAN,

3    THAT'S -- I KNOW YOU HAVE AN ADDITIONAL ARGUMENT THAT YOU ARE

4    NOT SUBJECT TO DECLARATORY RELIEF NOW, BUT ASSUMING YOU WERE,

5    IT WOULD SEEM TO ME, IF YOU DISTILL WHAT YOU'VE BEEN SAYING,

6    IT'S THAT WHAT YOU DID WAS NOT AN UNLAWFUL USE OF A

7    COPYRIGHT.  AND THEN I DON'T KNOW IF I CAN FULLY CONNECT

8    SOMETHING ELSE YOU SAID ABOUT THE ENTITLEMENTS RUNNING WITH

9    THE LAND.  CAN YOU GO BACK AND TELL ME HOW THAT FITS IN.

10           MR. LITVAK:  CERTAINLY.  EVEN THOUGH THE PLAINTIFF IS

11   SAYING THAT THEY HAVE NO INTEREST IN THE DESIGN AWARD, THEY

12   INEXTRICABLY COMBINE IT WITH THEIR STATEMENT ABOUT A

13   COPYRIGHT.  SO WHAT THEY'RE SAYING IS THE AWARD IS NOT

14   PROTECTED BUT BECAUSE IT WAS OBTAINED THROUGH THE USE OF A

15   VOLUNTARY --

16           THE COURT:  ONE MINUTE.  THE AWARD -- WAS IT -- WAS IT

17   THE DEFENDANT WHO GOT THE AWARD?

18           MR. LITVAK:  THE DEFENDANT -- NO.  THE PLAINTIFF

19   APPLIED --

20           THE COURT:  OSING GOT THE AWARD?

21           MR. LITVAK:  OSIK.

22           THE COURT:  OSIK.  AND SO --

23           MR. LITVAK:  BUT THEY DON'T GET THE AWARD.  THEY

24   APPLIED.

25           THE COURT:  OKAY.  OSIK WAS GIVEN PERMISSION, LET'S PUT
```

1    IT THAT WAY.  WHAT DID THE CITY OF WEST HOLLYWOOD DO?  GIVE

2    HIM A PERMIT OR WHAT?

3         MR. LITVAK:  IT GAVE THEM NOTHING.  IT GAVE THE OWNER

4    OF THE PROPERTY THE RIGHT TO PURSUE AN ELECTRONIC BILLBOARD

5    AND CONTINUE DOWN THE PROCESS TO MAKE AN APPLICATION TO GET A

6    PERMIT.

7         THE COURT:  HOW -- BUT HOW DID THE CITY OF WEST

8    HOLLYWOOD GIVE THE OWNER OF THE PROPERTY ANY RIGHT IF THE

9    PROPERTY OWNER NEVER APPLIED FOR ANY RIGHT?

10        MR. LITVAK:  BECAUSE IT COULD NOT GRANT PROPERTY RIGHTS

11   TO ANYONE WHO DOESN'T OWN THE PROPERTY --

12        THE COURT:  WELL --

13        MR. LITVAK:  -- AS A MATTER OF LAW.

14        THE COURT:  BUT YOU'RE -- BUT -- SO YOU'RE SAYING THAT,

15   AT LEAST AS I INTERPRET IT, THAT WHAT THE CITY OF WEST

16   HOLLYWOOD -- LET'S USE THE WORD AWARDED EVEN THOUGH IT MAY

17   NOT BE AN AWARD, WAS A PROPERTY RIGHT, IF ANYTHING; AND THE

18   CITY OF WEST HOLLYWOOD CAN'T AWARD A PROPERTY RIGHT.

19        MR. LITVAK:  TO ANYONE OTHER THAN THE PROPERTY OWNER.

20        THE COURT:  AND SO THE PERSON WHO APPLIED, THIS OSIK --

21   WAS HE THE SUBLESSOR?

22        MR. LITVAK:  NO.  HE WAS AN UNAPPROVED SUBLESSEE OF

23   WHICH THE PLAINTIFF DIDN'T --

24        THE COURT:  A SUBLESSEE OF THE SUBLESSOR?

25        MR. LITVAK:  OF THE SUBLESSEE.

```
1           THE COURT:  OF THE SUBLESSEE.

2           MR. LITVAK:  I DIDN'T -- I CAN CLEAR THIS UP FOR YOU --

3           THE COURT:  YEAH.

4           MR. LITVAK:  -- BECAUSE I UNDERSTAND THE -- THE FULCRUM

5      HERE.  THE -- CURRENTLY, SINCE WE'VE SOLD THE PROPERTY, MY

6      CLIENT NO LONGER HAS ANY ABILITY TO UTILIZE THIS AWARD TO

7      MAKE AN APPLICATION GOING FORWARD.  THE CURRENT OWNER MAY DO

8      SO BECAUSE THE CITY RECOGNIZES THAT THE PERSON WHO IS

9      ENTITLED TO MOVE FORWARD IS THE PROPERTY OWNER, NOT SOMEONE

10     WHO MAY HAVE BEEN THE PROPERTY OWNER.

11          AND, SEE, THE FACT IS THAT, BY SECRETLY MAKING

12     THIS APPLICATION, I SUPPOSE WE SHOULD BE GRATEFUL AND WE

13     SHOULD SAY THANK YOU, BUT WE DIDN'T KNOW ANYTHING ABOUT IT.

14     WE DIDN'T AUTHORIZE ANYTHING ABOUT IT.  WHEN WE LEARNED ABOUT

15     IT, WE ADVISED THEM THEY DIDN'T HAVE ANY OF OUR AUTHORITY.

16     AND SO THEY ARE SEEKING A REMEDY TO OVERCOME THE SITUATION

17     WHERE THEY HAVE DONE SOMETHING THAT COSTS VERY LITTLE BUT

18     THEY NOW ASCRIBE TO BEING EXTREMELY VALUABLE.

19          THE COURT:  I DON'T WANT TO GET INTO THE

20     EMBELLISHMENTS.  I AM NOT BEING CRITICAL.  I JUST WANT TO

21     KEEP THIS AS STRUCTURAL AS I CAN.

22          IT SEEMS THAT -- THAT YOUR -- THAT THE PLAINTIFF

23     MAY BE SAYING THAT, BY YOUR CLIENT ADVERTISING THE PROPERTY

24     FOR SALE, WHICH INCLUDED THIS RIGHT, LET'S CALL IT, OR THIS

25     DESIGN OF THE BILLBOARD, THAT THEY WERE MISUSING OR ILLEGALLY
```

1   USING THE COPYRIGHT.  IN COPYRIGHT LAW, GENERALLY SPEAKING,

2   WHETHER YOU ARE EVIL OR INNOCENT, IT DOESN'T GENERALLY MAKE

3   MUCH DIFFERENCE.  SO WHAT I AM ESSENTIALLY PROCESSING IS THAT

4   YOUR FOCUS IS ON PROPERTY RIGHTS.

5        MR. LITVAK:  I BELIEVE THAT THAT'S ESSENTIALLY WHAT

6   THEY'RE ARGUING.

7        THE COURT:  YOU ARE ARGUING IT.

8        MR. LITVAK:  I THINK IF YOU LOOK AT THE COMPLAINT, IT

9   VERY CAREFULLY DISASSOCIATES THE PROPERTY RIGHT FROM THIS

10  DRAWING.  BUT THE DRAWING HAS NO SIGNIFICANCE.  THERE'S A

11  FACTUAL LACK OF CLARITY BETWEEN THE TWO SIDES.

12       THE COURT:  LET ME ASK YOU -- WELL, I WAS JUST GOING TO

13  GET TO THAT.  WHAT ARE THE FACTUAL DIFFERENCES, AS YOU

14  UNDERSTAND IT, BETWEEN YOU AND THE PLAINTIFF?  IN OTHER

15  WORDS, WHAT ARGUMENT, LEGAL ARGUMENT, WOULD YOU BE PREPARED

16  TO MAKE THAT YOU CANNOT MAKE AT THIS POINT BECAUSE THERE'S

17  SOME FACTUAL DIFFERENCE?

18       MR. LITVAK:  PARDON ME, YOUR HONOR.  I THINK THE

19  FUNDAMENTAL DIFFERENCE IS THAT THE PLAINTIFF IS ASSERTING

20  THAT THE COPYRIGHT PERTAINING TO A DRAWING OF A BILLBOARD CAN

21  IMPEDE COMMERCE BY, IN EFFECT, TRANSFERRING THE PURPOSE OF

22  THAT COPYRIGHT INTO A COMMERCIAL AREA.  THE DRAWING

23  ORDINARILY TO HAVE COPYRIGHT TRAITS WOULD BE FOR THE PURPOSE

24  OF BUILDING BILLBOARDS.  IN THIS SITUATION THEY'RE NOT

25  TALKING ABOUT BUILDING A BILLBOARD.  THEY'RE TALKING ABOUT

1    OUR ABILITY TO TELL A PROSPECTIVE PURCHASER THAT, BECAUSE OF

2    THE CITY'S ACTION, THEY MAY APPLY FOR A DIGITAL BILLBOARD.

3    THEY'RE ALSO --

4         THE COURT:  WHY CAN'T YOU MAKE THAT ARGUMENT NOW?  WHAT

5    ADDITIONAL FACTS DO YOU NEED?  WHAT FACT DO YOU THINK THE

6    DEFENDANT WOULD CONTEST THAT WOULD IMPAIR THE LEGAL ANALYSIS?

7         MR. LITVAK:  I BELIEVE THAT THEY DO NOT SEE THE

8    DISTINCTION.  IF THE COURT IS GOING TO INQUIRE OF OUR ABILITY

9    TO FILE A DISPOSITIVE MOTION, WE'RE WITH YOU ON THAT.  AND AS

10   A MATTER OF FACT --

11        THE COURT:  I HAVE NO IDEA HOW IT WOULD RESOLVE.  I'M

12   JUST TRYING TO FIND OUT THIS PURPOSE OF THE HEARING, HOW BEST

13   TO AT LEAST APPROACH THE LITIGATION.

14        MR. LITVAK:  WELL, WE WERE ACTUALLY PREPARED TO MOVE

15   FORWARD ON THOSE LEGAL ISSUES IN EITHER MOTION FOR SUMMARY

16   JUDGMENT OR JUDGMENT ON THE PLEADINGS RELATIVELY SOON.  IN

17   CONVERSATIONS WITH PLAINTIFF'S COUNSEL, THEY ADVISED US AND

18   REQUESTED THE OPPORTUNITY TO FILE AN AMENDED COMPLAINT.

19   WE'VE ASKED TO SEE A COPY OF IT; AND WE'RE INCLINED TO

20   STIPULATE TO IT DEPENDING, OBVIOUSLY, ON ITS NATURE.  BUT WE

21   ANTICIPATE THAT WHAT THEY'RE DOING IS CONVERTING THIS

22   DECLARATORY RELIEF ACTION TO AN INFRINGEMENT ACTION.  SO WE

23   ANTICIPATE -- IF THAT HAPPENS IN THE NEXT FEW DAYS, THEN I

24   BELIEVE WE WILL TEE UP THE ISSUE.

25        THE COURT:  ALL RIGHT.  I DON'T WANT TO GO ANY FURTHER

1    NOW BECAUSE NOTHING CAN BE DECIDED.  IF THE PLAINTIFF INTENDS

2    TO FILE AN AMENDED COMPLAINT, I'LL PERMIT IT.  AND CAN YOU DO

3    THAT WITHIN SEVEN DAYS?

4        MS. CORLEY:  YOUR HONOR, YES, WE CAN GET THAT DONE

5    WITHIN SEVEN DAYS.  WE WERE ANTICIPATING RECEIVING ADDITIONAL

6    INFORMATION THAT SO FAR, YOU KNOW, COUNSEL HAS JUST BEEN

7    DESCRIBING FOR YOU A LOT OF THINGS THAT -- OF WHICH WE

8    HAVEN'T --

9        THE COURT:  MAYBE I CAN BE THE MAGISTRATE JUDGE FOR A

10   MOMENT.  WHAT DO YOU WANT FROM THE PLAINTIFF?

11       MS. CORLEY:  WE SOUGHT A SUBPOENA TO CBRE, THE ENTITY

12   THAT IS HOSTING OR THAT WAS HOSTING THE WEBSITE FOR THE SALE

13   OF THE PROPERTY.  THERE'S A DATA ROOM THAT CONTAINS MUCH OF

14   THE INFORMATION WE BELIEVE THAT WILL SHOW WHAT HAS BEEN

15   PROVIDED FROM RITTERSBACHER, THE DEFENDANT, TO THIRD PARTIES.

16       THE COURT:  WHEN YOU SAY WHAT IS PROVIDED, THE WAY I'M

17   UNDERSTANDING THE DEFENDANT'S ARGUMENT THEY DON'T DISPUTE

18   THAT THEY DID PROVIDE THAT.

19       MS. CORLEY:  YES, YOUR HONOR.  WHAT I WAS GOING TO SAY

20   IS THAT THEY HAVE PROVIDED INFORMATION INCLUDING

21   REPRESENTATIONS ABOUT HOW THE UTILIZATION OF THAT COPYRIGHT

22   EXISTS OR DOES NOT EXIST.  WHAT CAN BE DONE -- AND I'LL POINT

23   YOUR HONOR TO --

24       THE COURT:  WHAT YOU ARE SAYING THAT IN THE

25   REPRESENTATIONS BY DEFENDANT TO THE --

1          MS. CORLEY:  PROSPECTIVE BUYERS.

2          THE COURT:  -- THE SELLERS OR BUYERS THEY MADE

3    OBSERVATIONS ABOUT WHAT WAS COPYRIGHTABLE AND WHAT WASN'T?

4          MS. CORLEY:  PERHAPS.  THEY DID, WE DON'T KNOW.

5          THE COURT:  DID YOU?

6          MR. LITVAK:  NO, YOUR HONOR.

7          THE COURT:  THE ANSWER IS YOU DID NOT?

8          MR. LITVAK:  NO.  AS A MATTER OF FACT, THE BUYERS WERE

9    CAUTIONED ABOUT THE LACK OF UTILITY OF WHAT HAD HAPPENED

10   BEFORE, AND CARE WAS TAKEN TO MAKE SURE THAT WAS NOT THE --

11         THE COURT:  WHAT ELSE DO YOU WANT?

12         MS. CORLEY:  WE WOULD LIKE TO SEE THE INFORMATION

13   THAT'S ACTUALLY IN THE DATA ROOM, YOUR HONOR.

14         THE COURT:  WOULD YOU BE OPPOSED GIVE THEM WHAT

15   INFORMATION YOU GAVE TO THE PROSPECTIVE BUYERS?

16         MR. LITVAK:  WE HAVE OFFERED TO GIVE THEM WHATEVER

17   REFERENCES THE ALLEGED COPYRIGHT.  THEY HAVE SUBPOENAED THE

18   ENTIRETY OF ALL THE FILES PERTAINING TO THE TRANSACTION FOR

19   THE SALE.  WE UNDERSTAND THAT CBRE IS NOT AGREED TO DO THAT.

20   WE CERTAINLY FEEL THAT IT IS NOT APPROPRIATE.  BUT WE HAVE

21   OFFERED TO GIVE THEM ANY PIECE OF PAPER THAT TALKS ABOUT THE

22   COPYRIGHT.

23         THE COURT:  ALL RIGHT.  THEN DO THAT.

24         MS. CORLEY:  YOUR HONOR --

25         MR. LITVAK:  CERTAINLY, YOUR HONOR.

```
 1              MS. CORLEY:  -- IF I MAY.

 2              THE COURT:  I DON'T KNOW THAT YOU HAVE A RIGHT TO THE

 3    ENTIRE FILE, BUT YOU HAVE A RIGHT TO PERHAPS WHATEVER

 4    REFERENCE WAS MADE TO COPYRIGHTS IN THE FILE.

 5              MS. CORLEY:  YES, YOUR HONOR.  AND WE DID NOT ASK FOR

 6    THE ENTIRE FILE.  MUCH OF WHAT COUNSEL HAS BEEN SAYING IS

 7    FULL OF HYPERBOLE --

 8              THE COURT:  I DISCOUNT ALMOST EVERYTHING COUNSEL'S

 9    LAWYERS SAY BY WAY OF THEIR DESCRIBING OTHER LAWYERS OR

10    CLAIMS.  I JUST TRY TO FILTER IT ALL.  IT DOESN'T MEAN

11    ANYTHING TO ME.

12              MS. CORLEY:  THANK YOU, YOUR HONOR.

13              THE COURT:  NOW, SO YOU ARE GOING TO GET THAT.  WHAT

14    ELSE DO YOU WANT?

15              MS. CORLEY:  WE ALSO NEED THE PURCHASE AND SALE

16    AGREEMENTS AND ALL ADDENDA THERETO TO SEE EXACTLY WHAT WAS

17    TOLD --

18              THE COURT:  DO YOU HAVE ANY PROBLEM WITH THAT?

19              MR. LITVAK:  YES, YOUR HONOR.  I'M WILLING TO GIVE THEM

20    THOSE PORTIONS THAT SPECIFICALLY PERTAIN TO THE ALLEGED

21    COPYRIGHT.

22              THE COURT:  ALL RIGHT.  THE PORTIONS THAT RELATE TO THE

23    SUBJECT MATTER WILL BE RELEASED.

24              MR. LITVAK:  YES, YOUR HONOR.

25              MS. CORLEY:  INCLUDING ANY INDEMNIFICATION CLAUSES AND
```

```
 1    ANYTHING THAT HAS TO DO WITH THE TRANSFER OF THE BILLBOARD

 2    RIGHTS AS WE WERE TOLD BY COUNSEL --

 3         THE COURT:  ALL RIGHT.  ANYTHING IN THE TRANSACTION

 4    THAT RELATED TO THE BILLBOARDS.  AND WHAT ELSE DID YOU SAY?

 5         MS. CORLEY:  ANY ADDITIONAL CORRESPONDENCE BETWEEN

 6    SELLER AND BUYER --

 7         THE COURT:  REGARDING THE BILLBOARDS?

 8         MS. CORLEY:  -- CONCERNING THE BILLBOARDS.

 9         THE COURT:  ALL RIGHT.  THAT'S ORDERED.

10         MS. CORLEY:  THANK YOU, YOUR HONOR.

11         THE COURT:  NOW, WHAT DO YOU WANT FROM THEM?

12         MS. CORLEY:  YOUR HONOR, IF I MAY, THAT WILL REQUIRE

13    THEM GIVING IT TO US, US REVIEWING IT, AND THEN US PROVIDING

14    THE AMENDED COMPLAINT.

15         THE COURT:  ALL RIGHT.

16         MS. CORLEY:  WE ORIGINALLY SAID SEVEN DAYS.

17         THE COURT:  I'LL GIVE YOU MORE TIME.

18         MS. CORLEY:  THANK YOU, YOUR HONOR.

19         THE COURT:  WHAT DO YOU WANT FROM THEM?

20         MR. LITVAK:  WE NEED THE DOCUMENTS SUPPORTING --

21         THE COURT:  TAKE THE LECTERN.  I CAN'T HEAR YOU.

22         MR. LITVAK:  I APOLOGIZE.  OFF THE TOP OF MY HEAD, YOUR

23    HONOR.

24         THE COURT:  THIS IS A GOLDEN OPPORTUNITY.  I'M HERE TO

25    GIVE OUT CANDY.  TELL ME WHAT YOU WANT.
```

1      MR. LITVAK:  THE DOCUMENTS ESTABLISHING THE ASSIGNMENT

2  OF THE COPYRIGHT, ALL OF THE DOCUMENTS PERTAINING TO THE

3  COPYRIGHT.

4      THE COURT:  GO SLOW.  ALL DOCUMENTS PERTAINING TO THE

5  ASSIGNMENT OF THE COPYRIGHT FROM WHAT PARTY TO WHAT PARTY?

6      MR. LITVAK:  I'M NOT SURE.  I THINK IT'S OSIK AND

7  THERE'S AN ARCHITECT INVOLVED.

8      THE COURT:  GIVE HIM THOSE.

9      MS. CORLEY:  I'M SORRY, YOUR HONOR.  I'M SORRY,

10  COUNSEL.  I DID NOT HEAR YOU.

11      MR. LITVAK:  THE ASSIGNMENT DOCUMENTS FOR THE ALLEGED

12  COPYRIGHT.

13          WE WOULD ALSO LIKE TO HAVE ALL THE DOCUMENTS

14  BETWEEN THE THREE PARTNERS, WHICH IS OSIK, THE ARCHITECT, AND

15  NEW TRADITION; ANY COMMUNICATIONS BETWEEN OR AMONG THEMSELVES

16  REGARDING TO THE COPYRIGHT OR THE POTENTIAL COPYRIGHT.

17      THE COURT:  ALL RIGHT.  YOU CAN GO THROUGH THE

18  COMMUNICATIONS BETWEEN THOSE THREE PARTIES, AND AS I

19  INSTRUCTED THE DEFENDANT, YOU CAN ONLY TURN OVER THOSE

20  MATTERS THAT RELATED TO THE COPYRIGHT.

21      MS. CORLEY:  WILL DO, YOUR HONOR.

22      THE COURT:  OKAY.

23      MR. LITVAK:  AND, LASTLY, YOUR HONOR, I THINK THAT ANY

24  DRAFTS OR OTHER PREPARATORY DOCUMENTS FOR THE ALLEGED

25  COPYRIGHT.  I WILL NOTE THAT THE COPYRIGHT WAS ISSUED IN

```
1    NOVEMBER OF LAST YEAR, AND THE EVENTS OCCURRED IN THIS CASE

2    FUNDAMENTALLY PRE-DATE THAT DATE, JUST SO YOU ARE AWARE.

3         THE COURT:  WHY IS THAT IMPORTANT?

4         MR. LITVAK:  PARDON?

5         THE COURT:  WHY IS THAT IMPORTANT?  IT SEEMS LIKE THAT

6    IS GOING TO THE VIABILITY OF THE COPYRIGHT.

7         MR. LITVAK:  CERTAINLY ASPECTS OF IT --

8         THE COURT:  I'M NOT INTERESTED IN THAT NOW.

9         MR. LITVAK:  OKAY.

10         THE COURT:  SO YOU HAVE TEN DAYS EACH TO GET THAT DONE,

11    AND THEN YOU HAVE SEVEN DAYS AFTER YOU GET THAT TO FILE YOUR

12    AMENDED COMPLAINT.

13         MS. CORLEY:  THANK YOU, YOUR HONOR.  JUST TO BE CLEAR,

14    THERE'S NO REQUIREMENT THAT WE MEET AND CONFER ANY FURTHER

15    ON --

16         THE COURT:  YOU JUST MET AND CONFERRED.

17         MS. CORLEY:  THANK YOU, YOUR HONOR.

18         THE COURT:  MORE PRODUCTIVELY THAN YOU DID ON YOUR OWN.

19    IT HAPPENED AND YOU DIDN'T KNOW IT.

20         MR. LITVAK:  IS THE END RESULT THAT THE SUBPOENA ISSUED

21    TO CBRE IS WITHDRAWN?

22         THE COURT:  AT LEAST FOR THE MOMENT.

23         MR. LITVAK:  OKAY.  SUSPENDED.

24         THE COURT:  YES.

25         MR. LITVAK:  MAY WE ADVISE CBRE OF THAT FACT?
```

```
 1              THE COURT:  YES.

 2              MS. HOU:  YOUR HONOR, IF I MAY.

 3              THE COURT:  PLEASE MAKE IT BRIEF.

 4              MS. HOU:  SURE.  I'M JUST FORESEEING ISSUE WITH THE

 5      CBRE DOCUMENTS AND SUBPOENA WITH THAT LIMITATION.  IS THAT

 6      PRESUPPOSES THE FACT THAT THE PARTIES, THE BUYER AND SELLER,

 7      WERE DISTINGUISHING BETWEEN THE SUBJECT PROPERTY AND THE

 8      BILLBOARD/COPYRIGHT SO --

 9              THE COURT:  ARE YOU SAYING THERE MIGHT BE NEGOTIATIONS

10      SEPARATE AND APART FROM THE SALE OF THE BUILDING?

11              MS. HOU:  WELL, THAT'S WHAT I AM CONCERNED.  WHAT WE'RE

12      ENVISIONING WITH WHAT THE COURT JUST ORDERED WAS A SORT OF A

13      DUAL TRACK.  I DON'T KNOW THAT NEGOTIATIONS OF THE SUBJECT

14      PROPERTY WERE EVER NEGOTIATED AS A WHOLE OR IF BILLBOARDS

15      WERE NEGOTIATED --

16              THE COURT:  WAS THE BILLBOARDS SEPARATELY NEGOTIATED OR

17      JUST PART OF THE SALE?

18              MR. LITVAK:  JUST PART OF THE SALE, YOUR HONOR.

19              THE COURT:  OKAY.  LET'S ASSERT THAT.

20              MS. HOU:  IN THAT RESPECT, YOUR HONOR, WOULDN'T ALL

21      DOCUMENTS RELATED TO THE SUBJECT PROPERTY BE --

22              THE COURT:  I AM LIMITING IT TO WHAT I JUST SAID.

23      THAT'S THE END OF IT FOR THE TIME BEING.

24              MS. HOU:  THANK YOU, YOUR HONOR.

25              THE COURT:  THANK YOU VERY MUCH.
```

UNITED STATES DISTRICT COURT

1          MS. CORLEY:  THANK YOU, YOUR HONOR.

2

3                  (AT 2:57 P.M., THE PROCEEDINGS WERE

4              ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1                   CERTIFICATE OF FEDERAL PRO TEMPORE

 2                         OFFICIAL REPORTER

 3

 4        COUNTY OF LOS ANGELES )

 5        STATE OF CALIFORNIA   )

 6

 7                I, GAYE L. LIMON, FEDERAL PRO TEMPORE OFFICIAL

 8        COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

 9        FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

10        THAT, PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE,

11        THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

12        STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

13        ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS

14        IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

15        CONFERENCE OF THE UNITED STATES.

16                DATED THIS 16TH DAY OF FEBRUARY, 2023.

17

18        _____

          GAYE L. LIMON, CSR NO. 7416
19        FEDERAL PRO TEMPORE OFFICIAL COURT REPORTER

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT