William Litvak (SBN 90533)
Eric P. Markus (SBN 281971)
DAPEER, ROSENBLIT & LITVAK, LLP
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064
Telephone: (310) 477-5575
Facsimile:   (310) 477-7090

Attorneys for Defendant,
RITTERSBACHER SUNSET, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW TRADITION MEDIA, LLC, a New York Limited liability company <br><br> Plaintiffs, <br><br> vs. <br><br> RITTERSBACHER SUNSET, LLC, a California limited lability company; and DOES 1 to 10, inclusive; <br><br> Defendants. | Case No. 2:22-cv-08670-WLH (ASx) <br><br> **DEFENDANT RITTERSBACHER SUNSET, LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: <br> Time: <br> Courtroom:    Courtroom of the Hon. Wesley L. Hsu <br><br> [Filed concurrently with Declarations of Randy Garitty and William Litvak; Separate Statement of Undisputed Material Facts; Request for Judicial Notice; [Proposed] Order] |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

    PLEASE TAKE NOTICE that on _____, at _____ a.m./p.m., or as soon

thereafter as the matter may be heard, in the United States District Court, Central District of California, located at _____, in Courtroom _____, the courtroom of the Honorable William H. Hsu, presiding, Defendant Rittersbacher Sunset, LLC ("Rittersbacher") will, and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's Minute Order of May 8, 2023, for an order granting partial summary judgment in its favor on the following:

1. The First Cause of Action in Plaintiff New Tradition Media, LLC's ("New Tradition" or "Plaintiff") First Amended Complaint ("FAC") (ECF 24) for Direct Copyright Infringement;

2. The Second Cause of Action in the FAC for Contributory Copyright Infringement;

3. The Third Cause of Action in the FAC for Vicarious Copyright Infringement;

4. The Sixth Cause of Action in the FAC for a Declaratory Judgment;

5. Rittersbacher's Tenth and Twenty-Third Affirmative Defenses of Waiver;

6. Rittersbacher's Eighth Affirmative Defense of Estoppel; and,

7. Rittersbacher's Seventh Affirmative Defense of Fair Use.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 15, 2023.

This motion is based on the following memorandum and related moving papers, Plaintiff's opposition papers, any reply papers, and any hearing on this motion.

Respectfully submitted,

DAPEER, ROSENBLIT & LITVAK, LLP

Dated: May 22, 2023                    By:_____/s/ Eric P. Markus_____
                                            William Litvak
                                            Eric P. Markus
                                            Attorneys for Defendant,
                                            Rittersbacher Sunset, LLC

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………4

MEMORANDUM OF POINTS AND AUTHORITIES………………………………7

I.      INTRODUCTION………………………………………………..7

II.     STATEMENT OF FACTS……………………………………………...10

III.    LEGAL DISCUSSION………………………………………......16

     A.      Legal Standard………………………………………………16

     B.      New Tradition Cannot Claim Copyright Infringement Against
         Rittersbacher's Verbal Statements……………………………………17

     C.      Rittersbacher's Sharing Of A Public Record Cannot Constitute
         Copyright Infringement……………………………………………19

         1.      Waiver Or Abandonment By Plaintiff……………………………19

         2.      New Tradition Lacks Standing…………………………………...20

         3.      Equitable Estoppel………………………………………..21

         4.      Rittersbacher's Use of the Application Constitutes Fair Use…..…22

              a.      Purpose and Character of the Use…………………………23

              b.      Nature of the Copyrighted Work…………………………...24

              c.      Amount and Substantiality of Portion Used………………..24

              d.      Effect of the Use Upon The Potential Market For Or
                  Value of the Copyrighted Work…………………………25

          5.      Copyright Misuse………………………………………….25

IV.     CONCLUSION…………………………………………………26

## **TABLE OF AUTHORITIES**

**Federal Cases:**

*A & M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001)……………………………………………..19

*Apple Inc. v. Psystar Corp.,*
658 F.3d 1150 (9th Cir. 2011)……………………………………………...25

*Berkic v. Crichton,*
761 F.2d 1289 (9th Cir. 1985)……………………………………………...18

*Campbell v. Acuff-Rose Music, Inc.,*
510 U.S. 569 (1994)……………………………………………...22-23, 25

*Cline v. Indus. Maint. Eng'g & Contracting Co.,*
200 F.3d 1223 (9th Cir. 2000)……………………………………………...17

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991)……………………………………………..17

*Hampton v. Paramount Pictures Corp.,*
279 F.2d 100, 104 (9th Cir. 1960)……………………………………………..21

*Herbert Rosenthal Jewelry Corp. v. Kalpakian,*
446 F.2d 738, 741-742 (9th Cir. 1971)…………………………………………..18

*Jada Toys, Inc. v. Mattel, Inc.,*
518 F.3d 628 (9th Cir. 2008)……………………………………………….17

*Kelly v. Arriba Soft Corp.,*
336 F.3d 811 (9th Cir. 2003)……………………………………………….23-25

*Lynn v. Sheet Metal Workers' Intern. Ass'n,*
804 F.2d 1472 (9th Cir. 1986)……………………………………………...16

*Mattel, Inc. v. Walking Mountain Prods.,*
353 F.3d 792 (9th Cir. 2003)……………………………………………….22

*Micro Star v. Formgen Inc.,*
154 F.3d 1107 (9th Cir. 1998)……………………………………………...19-20

<u>**Federal Cases (continued)**</u>:

*Omega S.A. v. Costco Wholesale Corp.*,

    No. CV 04-05443 TJH, 2011 WL 8492716 (C.D. Cal. Nov. 9, 2011)……………..26

*Oravec v. Sunny Isles Luxury Ventures L.C.*,

    469 F. Supp. 2d 1148 (S.D. Fla. 2006)……………………………………………18-19

*Practice Management Information Corp. v. American Medical Association*,

    121 F.3d 516, 520 n.9 (9th Cir. 1997)…………………………………………...25

*Religious Tech. Ctr. v. Lerma*,

    No. CIV.A. 95-1107-A, 1996 WL 633131 (E.D. Va. Oct. 4, 1996)……………….26

*Seltzer v. Green Day, Inc.*,

    725 F.3d 1170 (9th Cir. 2013)…………………………………………….23, 25

*Simmons v. G. Arnett*,

    47 F.4th 927 (9th Cir. 2022)……………………………………………..16

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,

    952 F.3d 1051 (9th Cir. 2020)…………………………………………...17

*Soremekun v. Thrifty Payless, Inc.*,

    509 F.3d 978 (9th Cir. 2007)……………………………………………17

*Stanislawski v. Jordan*,

    337 F. Supp. 2d 1103 (E.D. Wis. 2004)……………………………………24

*Swirsky v. Carey*,

    376 F.3d 841 (9th Cir. 2004)……………………………………………17

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,

    293 F.3d 791 (5th Cir. 2002)……………………………………………19


<u>**California Cases**</u>:

*Assilzadeh v. Cal. Federal Bank*,

    (2000) 82 Cal.App.4th 399……………………………………………23

**<u>Statutes:</u>**

37 C.F.R. § 202.11(c)(4)……………………………………………………………18

17 U.S.C. § 106……………………………………………………………………..18

17 U.S.C. § 107……………………………………………………………………..22

17 U.S.C. § 501(b)…………………………………………………………….20-21

**<u>Court Rules:</u>**

Federal Rules of Civil Procedure, Rule 56(e)…………………………………………17

**<u>Treatises:</u>**

4 Melville Nimmer & David Nimmer, *Nimmer On Copyright* § 13.06 (2000)………19

## I.    INTRODUCTION

Summary judgment should be granted in this case because New Tradition Media, LLC ("New Tradition") cannot overcome the lack of a triable issue on the only federal question presented: violation of a copyright.  No amount of conflation can overcome the fatal deficiencies in hollow claims that are nothing more than a last-ditch effort on New Tradition's part to extract a multi-million-dollar payment from Rittersbacher Sunset LLC ("Rittersbacher") after all of its earlier extortionate efforts failed.

This case is the latest in one of three lawsuits between Rittersbacher and New Tradition and/or its business partner, Osik Media, LLC ("Osik").  For years, Osik operated a billboard at the real property located at 8300 West Sunset Boulevard, West Hollywood, California ("Subject Property") without Rittersbacher's knowledge or consent.  Rittersbacher, the former owner of the Subject Property, terminated Osik's sublease and marketed the Subject Property for sale.  But with its ability to generate advertising revenue extinguished, Osik refused to vacate the Subject Property and conspired with New Tradition to leverage Osik's wrongful possession to force Rittersbacher to pay them millions of dollars in exchange for their agreement to vacate. Osik and New Tradition did so with express knowledge that Rittersbacher's inability to obtain clear title to the Subject Property would make the Subject Property less marketable and thereby cause Rittersbacher financial harm.

Rittersbacher refused to acquiesce and obtained a judgment of possession against Osik.  Rittersbacher then sued Osik again (and later, New Tradition) for intentional interference with prospective economic advantage and contract.  Unfortunately, New Tradition's plan worked – Rittersbacher was forced to give the eventual purchaser of the Subject Property a $10 million discount on the previously agreed-upon sales price to close its deal.  New Tradition now seeks to add insult to injury.

The malicious intent of New Tradition's lawsuit is established by the frivolity of the allegations in the First Amended Complaint ("FAC").  When distilled, the only salient allegation therein relates to the inclusion of a copy of an application New Tradition

submitted to the City of West Hollywood ("City") for a "Concept Award" in the information Rittersbacher provided to prospective purchasers about the Subject Property. Specifically, Rittersbacher's real estate broker included a copy of New Tradition's application in a "data room" created to provide prospective purchasers access to historical data about the Subject Property that Rittersbacher was legally required to disclose: the Concept Award is a land use entitlement authorizing the owner of the Subject Property or a person authorized by the owner to apply to the City to construct a digital billboard[1] at the Subject Property.  Prospective purchasers have a right to know what they may or may not do with a particular piece of real property before they buy it.

It must also be clarified at the outset that despite references in the FAC to a purported right to construct a specific digital billboard at the Subject Property and the hypothetical profitability of operating it, none of these statements has any relationship to the alleged copyright.  New Tradition's alleged copyright pertains *only* to two-dimensional drawings of a billboard and limited descriptive language set forth in a few pages of New Tradition's application to the City.  New Tradition has never had any right to construct its billboard design at the Subject Property, and its repeated references to construction and the right to do so constitute intentional misdirection. The copyright registration *does not* include any reference to architectural drawings or plans.  As such, even if someone wanted to construct the digital billboard design New Tradition included in its application, New Tradition's alleged copyright would provide no protection.

Plaintiff's oblique references to the Concept Award and its utility and value in conjunction with the alleged copyright are similarly misleading.  Plaintiff unequivocally admits in its FAC that it does not have any ownership interest in the Concept Award. Thus, any reference to the Concept Award in the context of the copyright is simply more misdirection.

The undeniable fact is that the Concept Award is inextricably tied to nothing other

---

[1] A digital billboard is distinguished from a standard, static billboard due to its ability to post and change copy electronically, thereby enabling advertising to be changed more frequently, if not daily or many times in a day, thereby increasing revenue and reducing labor costs.

than the Subject Property, and what the Subject Property's owner may be able to build or not build is entirely up to what the City of West Hollywood, its staff, the Planning Commission, and the City Council may do in the future. If the Subject Property's owner elects to attempt to construct the billboard in the vein of what is contained in New Tradition's application at some time in the future, then any action for purported infringement could only be directed to them.

But the very fact that Plaintiff is concerned about the construction of a billboard based upon its design reflects that it is essential to provide notice to a potential buyer of the existence of the two-dimensional drawing in the Concept Award application. Notice of the Concept Award and the application submitted in support thereof allows potential purchasers to assess for themselves whether the existence of the Concept Award will impact their decision to purchase the Subject Property. In line with this, when Rittersbacher assigned the Concept Award to the eventual purchaser, Rittersbacher expressly disclaimed any representations or even ownership of any right to utilize the Concept Award at all, let alone as set forth in the application.

Moreover, once the application was submitted to the City, it became inextricably linked to the Subject Property forever – an operative, historical fact. Just like all other land entitlements, the Concept Award reflects legal rights and privileges. Plaintiff's claim to the contrary would preclude sellers of real property from disclosing permit information to prospective buyers.[2]

This is especially true in this case, where *the City expressly required that all Concept Award applicants transfer all ownership rights to their applications to the City at the time of submission. The City further made clear that any application submitted could be made available to the public upon submission of a public records request and took the extraordinary step of requiring applications to confirm their acceptance of this*

---

[2] It is not suggested that architectural plans are not protected from misuse. But this case *does not involve architectural plans* or their copyright protection. The issues in this case are limited to a 2-dimental drawing made part of a permit application submitted to the City.

1  ***rule in writing, under penalty of perjury.***[3]

2  Stated another way, upon the City's receipt of New Tradition's application, any

3  copyright in the contents of the application became the property of the City. New

4  Tradition therefore lacks standing to maintain this lawsuit, has waived any claim for

5  copyright infringement, and should be estopped from seeking to disavow its architect's

6  statement to that effect in the Application. And this does not even account for the fact

7  that Rittersbacher's use of the allegedly copyrighted materials is unquestionably fair use.

8  **II.   STATEMENT OF FACTS**

9  At all relevant times prior to February 1, 2023, Rittersbacher was the owner of the

10  Subject Property (UMF 1.) The Subject Property is located on the famous Sunset Strip

11  and was the site of the Standard Hollywood Hotel ("Hotel") until the Hotel's closure in

12  January 2021. (UMF 2).

13  At all relevant times prior to September 3, 2021, Rittersbacher leased the Subject

14  Property to Golden Crest, Inc. ("GCI") in its capacity as successor in interest of Blue

15  Ribbon Properties, Inc. pursuant to that certain Ground Lease, dated July 9, 1959

16  ("Ground Lease"). (UMF 3). The Ground Lease requires that Rittersbacher's consent be

17  obtained prior to any sublease of any portion of the Subject Property. (UMF 5).

18  On April 5, 2001, GCI entered into that certain Billboard Lease with Melven

19  Genser Outdoor, Inc. ("Genser") whereby GCI purportedly subleased the northwest

20  corner of the Subject Property to Genser, who in turn operated a static billboard thereon

21  ("Billboard"). (UMF 6). Rittersbacher did not have knowledge of the Billboard Lease

22  until March 9, 2021, and has never consented to it. (UMF 8).

23  On May 1, 2010, Outdoor Specialists, LLC – a predecessor entity of Osik Media,

24  LLC ("Osik") – acquired Genser's rights in the Billboard Lease by way of a Purchase

25  and Assignment Agreement. (UMF 9, 10). Outdoor, now Osik, has operated the

26  Billboard at all times since. (UMF 11). Rittersbacher did not have knowledge of

27

28  [3] In fact, the copy of the Application utilized in the Statement of Uncontroverted Facts was obtained from the City through a public records request.

Genser's assignment of its rights in the Billboard Lease to Outdoor Specialists, LLC until March 9, 2021 and has never consented to the assignment.

On August 30, 2017, Osik entered into a license agreement with New Tradition Media, LLC granting New Tradition the right to display advertisements on the Billboard. (UMF 14, 15).

In May 2020, Rittersbacher filed a lawsuit against GCI and Ferrado Hollywood, LLC ("Ferrado") (GCI's sublessee and the Hotel operator) in relation to a dispute regarding a rent adjustment called for under the Ground Lease ("Rent Action"). Litigation was filed after Rittersbacher, on the one hand, and GCI and Ferrado, on the other, were unable to reach a consensus on the annual rent for the Subject Property despite negotiations spanning three years, including an in-person meeting on September 11, 2019.  (Decl. Garitty, ¶¶ 4-7).  The Court in the Rent Action ruled in favor of Rittersbacher on December 4, 2020.  (Decl. Garitty, ¶ 8; RJN, ¶ 2).

On September 3, 2021, Rittersbacher, GCI and Ferrado entered into a Ground Lease Termination Agreement, Settlement Agreement and Mutual General Release ("Termination Agreement"), by which GCI and Ferrado agreed to terminate the Ground Lease and all subleases thereunder, and to further surrender possession of the Subject Property to Rittersbacher.  (UMF 20-22).  The Termination Agreement also provided for the dismissal of the Rent Action.  (Decl. Garitty, ¶ 14).

Rittersbacher first learned of the Billboard Lease on March 9, 2021 during Randy Garitty's (Rittersbacher's principal) negotiation of the Termination Agreement.  (UMF 23).  It was at this time that Mr. Garitty also learned of a September 12, 2019 Amendment to the Billboard Lease between GCI and Osik ("Amendment"), which provided that GCI's rights in the Subject Property were derived from the Ground Lease and that the Billboard Lease would automatically terminate in the event the Ground Lease was terminated for any reason.  (UMF 16-18, 23).

On September 13, 2021, Ritttersbacher sent notice to Osik that the Billboard Lease had terminated ("Termination Notice").  (UMF 66-67).

Years prior to the Billboard Lease's termination, Osik and New Tradition had participated in the City's Sunset Boulevard Off-Site Advertising Signage Program ("Program").  (UMF 31).  The Program was intended to create new opportunities for digital off-site advertising signage and billboards along Sunset Boulevard.  As part of the Program, the City created a procedure whereby applicants for new off-site advertising signs could participate in a selection process "to screen for design excellence."  (UMF 24.)

The screening process submission guidelines are set forth in the "Sunset Boulevard Off-Site Advertising Signage Program Design Excellence Screening Application Submission Guide" ("Submission Guide").  (Decl. Litvak, Ex. 3; RJN, ¶ 3).  As set forth therein, applicants were required to submit an application that included a site plan and project renderings to be reviewed and scored by a committee "based on specific criteria…that were formulated based on the policy's design principles…"  (UMF 27).

The City's "Screening Application Requirements" further required that an application contain the following: "(1) Application/Owner Information Form; (2) Proof of Payment; (3) Cover Letter and Project Narrative; (4) Design Excellence Criteria Description; (5) Site Plan; (6) Table indicating the zoning designation; (7) Building/Sign Elevation Drawings; (8) Context View; (9) Project Renderings; (10) Site lines and studies; (11) Design and Project Team Bios/Relevant Project Experience…"  (UMF 34). Top scoring projects were "granted a concept award valid for a period of 24 months" ("Concept Award") during which time an application for an electronic billboard could be submitted to the City.  (UMF 28).

Importantly, the Screening Application Requirements also make clear,

**All screening application will become the property of the City when received.  Information contained in the screening applications may be subject to disclosure under the California Public Records Act.**

(UMF 40, emphasis added).

Realizing the opportunity to significantly increase their advertising revenue if they could convert the static billboard at the Subject Property into a digital display, NT and Osik engaged Studio AR&D Architects, Inc. ("Studio") ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (UMF 29).

Under the terms of the Initial Proposal for Architectural Services for a Commercial Project ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ (UMF 30).

In or around November 2019, Studio submitted to the City a Sunset Boulevard Off-Site Advertising Signage Program Design Excellence Screening Application on behalf of New Tradition and Osik ("Application"). (UMF 31). Despite the fact the Application was submitted under penalty of perjury, Sean Lockyer (Studio's principal) falsely attested in the Application that the owner of the Subject Property and applicant was GCI. (UMF 35-39).

Included as part of the Application was a 17-page brochure containing various renderings of Studio's digital billboard concept. (UMF 33). It is these renderings that New Tradition claims are copyrighted. (UMF 75-77). The renderings became the City's property when the City received them. (UMF 40).

On March 18, 2021, shortly after learning of the Billboard Lease and the Application, Rittersbacher's lawyers sent correspondence to Nicholas Petralia, Osik's principal, advising that Rittersbacher did not consent to any alteration or conversion of the Billboard and that Osik would be proceeding with the Application at its own risk, without any assurances from Rittersbacher. (UMF 41).

On March 26, 2021, the City granted a Concept Award to the Subject Property. (UMF 44, 47). The Concept Award authorized the owner of the Subject Property – or an individual/entity approved in writing by the Subject Property's owner – to submit a

formal application for new off-site advertising signage to the City's Department of Planning and Development Services.  (UMF 45).

Concept Awards are land use entitlements that "run with the land" of the properties for which they are issued.  (UMF 42-43, 49).  New Tradition does not claim any ownership in the Concept Award, nor any copyright interest therein.  (UMF 48).

The Concept Award "d[id] not constitute any approval or official endorsement of the proposed project."  (UMF 46).  In order to construct a digital billboard on property in the City, Concept Award recipients are required to submit another application to the City for a sign permit.  (UMF 50).  Where the applicant for the sign permit is not the property owner, the applicant is required to demonstrate that the property owner has authorized the permit application.  (UMF 50-52).

Shortly before the Concept Award was issued, Rittersbacher engaged CBRE to market and sell the Subject Property on February 18, 2021.  (UMF 53).  CBRE thereafter began to publicly market the Subject Property for sale on October 4, 2021.  (UMF 54). New Tradition was aware of Rittersbacher's listing of the Subject Property no later than October 8, 2021.  (UMF 55).

As part of its marketing of the Subject Property, CBRE created a website from which prospective purchasers could access a "Data Room".  (UMF 56).  The "Data Room" contained documents evidencing each of the land use entitlements tied to the Subject Property, including: (1) site leases with various cellular carriers and the documents; (2) records reflecting storm drain easements and public road and highway easements; and (3) the Concept Award and a complete copy of the Application, identical to that which was submitted to the City.  (UMF 57).

Prospective purchasers wishing to access the "Data Room" were required to sign a Confidentiality and Non-Disclosure Agreement, which prohibited prospective purchasers from disclosing or duplicating any of the information contained in the "Data Room".  (UMF 59).  The Concept Award and a complete copy of the Application, both of which are public records that can be obtained by any person through a public records

request, were made available to prospective purchasers to disclose the fact that parties unrelated to Rittersbacher were affecting title to the Subject Property. (UMF 58, 64-65).

CBRE sent marketing emails to third parties regarding the sale of the Subject Property and included information about the Subject Property on its own website. (UMF 60, 62). CBRE's website and marketing emails did not include a copy of any materials in which New Tradition claims a copyright. (UMF 61, 63).

After Rittersbacher's transmission of the Termination Notice on September 13, 2021, Osik refused to vacate the Subject Property. (UMF 68). Instead, on November 5, 2021, Osik, New Tradition and Studio entered into an Addendum to the Initial Proposal wherein ███████████████████████████████████████████████████ ████████████████████████████████████. (UMF 70, 72). The Addendum was executed on or about November 5, 2021 – after Studio transferred ownership of the alleged copyright to the City – but it and Mr. Lockyer's signature are ████████████████████████ (UMF 71-72).

Osik simultaneously attempted to reach an agreement with Rittersbacher regarding a new lease for the Billboard, but no agreement was reached. (UMF 69, 73). Rittersbacher thereafter filed an unlawful detainer action against Osik on January 14, 2022. (UMF 74).

On April 1, 2022. Rittersbacher entered into a written contract to sell the Subject Property to 8300 Sunset Owner LLC ("Buyer") for $122.5 million ("Purchase Agreement"). As a result of Osik's unlawful detainer of the Subject Property, a condition precedent was included in the Purchase Agreement requiring Rittersbacher to dispossess Osik or reach an agreement with Osik approved by the Buyer. (UMF 75).

While Rittersbacher was negotiating the terms of its sale to Buyer, New Tradition filed an application with the United States Copyright Office to register a purported copyright in several two-dimensional renderings of the digital billboard contained within the Application. Through its registration application and related correspondence with the Copyright Office, New Tradition disclaimed any copyright in anything other than the

two-dimensional drawings of the electronic billboard concept contained on pages 1-5, 9-10, and 16 of the brochure included as part of NT's Application.   (UMF 76, 78).

Judgment was entered against Osik in the unlawful detainer action on November 18, 2022.   The judgment provided that Rittersbacher was restored to immediate possession of the Subject Property.   (UMF 79).   Osik refused to surrender possession of the Subject Property to Rittersbacher even after entry of the Court's judgment in the unlawful detainer action, however, and New Tradition filed this action against Rittersbacher 11 days later.   (UMF 80, 81).

As a result of Osik's refusal to comply with the judgment in the unlawful detainer action, Rittersbacher was unable to satisfy the condition precedent in the Purchase Agreement and was required to reduce the Subject Property's sales price by $10 million in order to complete its sale to Buyer, which it did on or about January 31, 2023.   (UMF 82-83). As part of the sale, Rittersbacher quitclaimed to Buyer "all of [Rittersbacher's] right, title, and interest, in and to (i) the Concept Award, and (ii) any other documents, rights, entitlements, permits, applications, agreements and work product, if any, relating to the Concept Award."   (UMF 84-85).   Rittersbacher did not assign anything in which New Tradition claims a copyright. (UMF 86).

## III.    LEGAL DISCUSSION

### A.    Legal Standard

Summary judgment is appropriate where, as here, "there is no genuine dispute as to any material fact' when viewing the record in the light most favorable to the nonmoving party, such that the moving party 'is entitled to judgment as a matter of law.'" *Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022). "A material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Id.*   On the other hand, the mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. *Lynn v. Sheet Metal Workers' Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986).

Defendants satisfy their burden on summary judgment "merely by pointing out there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Thereafter, the burden shifts to the nonmoving party to raise a genuine issue for trial. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984. However, even where a party fails to properly support an assertion of fact, the Court may still consider the fact undisputed for purposes of the motion and may grant summary judgment if the facts considered undisputed show the movant is entitled to it. *See* FRCP 56(e).

## B.   New Tradition Cannot Claim Copyright Infringement Against Rittersbacher's Verbal Statements

To demonstrate copyright infringement, New Tradition must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282, 1296, (1991). "In the absence of direct evidence of copying, which is the case here, the plaintiff 'can attempt to prove it circumstantially by showing that…the two works share similarities probative of copying.' " *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

Similarity involves a two-part test. "The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. *Id.* Critically, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.' " *Id.* (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). The second part, the intrinsic test, "test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008).

The Ninth Circuit has "frequently affirmed summary judgment in favor of

copyright defendants on the issue of substantial similarity." *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985) (collecting cases).

Here, New Tradition's asserted copyright is registered as two-dimensional artwork and technical drawings, i.e., a pictural, graphical or sculptural work ("PGS"). (UMF 76-78). While the regulations allow for dual PGS and architectural work protections, a *separate* registration is required for each. *See* 37 C.F.R. § 202.11(c)(4). As such, New Tradition's copyright only grants the holder certain rights, to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the copyrighted works to the public; and (4) display the work publicly. 17 U.S.C. § 106.

In the case of PGS works, "only the drawings themselves are protected from copying." *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1163 (S.D. Fla. 2006) (granting summary judgment to Defendants because "building a structure depicted in a PGS work did not amount to infringement").

New Tradition asserts claims against Rittersbacher for direct copyright infringement based on, *inter alia*, "making false and misleading statements to third parties about Defendant's purported rights in the Copyright and transferring rights in the Copyright all without the permission or authorization of the Copyright owners." ECF 24, ¶ 74; *see also id.* at ¶¶ 7, 30–35 37-39, 63, 66. Even if New Tradition's allegations were true (they are not), copyright law does not provide relief for *verbally* "referenc[ing] the Concept Award and The Digital Billboard." *Id.* at ¶ 31.

Importantly, ***New Tradition makes no claim that the images contained in the digital sales brochure or on Rittersbacher's website infringe its copyright.*** Thus, New Tradition's claims against Rittersbacher for "making false and misleading statements to third parties about Defendant's purported rights in the Copyright" must be dismissed even if Rittersbacher's statements were false (which they are not). *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741-742 (9th Cir. 1971) ("A copyright … bars use of the particular 'expression' of an idea in a copyrighted work but does not bar use of the 'idea' itself. Others are free to utilize the 'idea' so long as they do not plagiarize...'").

### C.   Rittersbacher's Sharing Of A Public Record Cannot Constitute Copyright Infringement

#### 1.   Waiver or Abandonment by Plaintiff

Waiver is the voluntary relinquishment of a known right or privilege. "In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'" *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1026 (9th Cir.2001) (quoting 4 Melville Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)).   Abandonment of a copyright "must be manifested by some overt act indicating an intention to abandon that right." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).   A copyright holder can also abandon some rights without abandoning all of them.  *Id.*

In *Oravec*, *supra*, the court considered similar circumstances in which an architect submitted his work to the Lower Manhattan Development Corporation for its World Trade Center competition. 469 F. Supp. 2d 1148 at 1177.   "The application process required applicants like Oravec to acknowledge that they maintained no copyright protections in the work they submitted for the [competition]." *Id.* at 1177–78.  Based on this fact, the court found that the architect "clearly and unambiguously manifested his intent to abandon any copyright protection over that particular design." *Id.* at 1178.  The court granted summary judgment to the defendants despite the architect's declaration "stating that he never intended to abandon any rights in his designs." *Id.*; *see also, e.g.*, *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002).

The facts here are the same.  New Tradition submitted its Application to the City as part of the Sunset Boulevard Off-Site Advertising Signage Program.  ***The City's Program Submission Guide clearly provides, "All screening application will become the property of the City when received.   Information contained in the screening applications may be subject to disclosure under the California Public Records Act."*** (UMF 26, 40).   New Tradition's architect – the only owner of the alleged copyright ███████████████████████████████████ (UMF 70-72) – submitted the Application under penalty of perjury and signed an acknowledgment that he had "read

the application information packet and [would] adhere to the guidelines and requirements included in it." (UMF 37).  New Tradition also acknowledges that it does not own the Concept Award itself.  (UMF 48).

At a minimum, New Tradition waived its copyright rights through the overt act of submitting the Application to the City to become a public record as to reproducing and distributing copies of the public records themselves.  *See, e.g.*, *Micro Star*, *supra*, 154 F.3d at 1114. No broader holding is required to grant summary judgment as to New Tradition's claims for direct infringement.  At most, Rittersbacher distributed copies of the Application as it was submitted to the City of West Hollywood, which Rittersbacher has obtained from public records requests (and which was the property of the City). (UMF 64-65).  Rittersbacher did so for purposes of disclosing the Subject Property's land use entitlements and pending disputes to prospective purchasers.  (UMF 58).

Other than sharing the public records as public records, Rittersbacher has not made any use of the alleged copyrighted works.  Rittersbacher's own materials do not include a copy of the Application or any part thereof.  (UMF 60-63).  Rittersbacher has not created any derivative works using the Application. Rittersbacher's Data Room Access Agreement further prohibited prospective purchasers from disclosing or duplicating any of the information contained in the Data Room.  (UMF 59).  And in any case, New Tradition has presented no evidence of any third-party derivative works. As such, this case is immediately distinguishable from circumstances where a party modifies and resubmits copyrighted plans contained in public records.  Summary judgment is therefore appropriate.  A contrary holding would enable copyright holders to sue litigants for requesting judicial notice of copyright deposit materials and municipalities for complying with public records requests.

## 2.  <u>New Tradition Lacks Standing</u>

Only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17

U.S.C. § 501(b).  Summary judgment is appropriate in this case because the undisputed facts establish that New Tradition has never been a legal or beneficial owner of any alleged copyright in the two-dimensional images which are the subject of New Tradition's copyright registration.  (UMF 76-78).

The Initial Proposal, ██████████████ makes clear that ████████ ████████████████████████████████████████ (UMF 29-30).  Thereafter, in or around November 2019, Studio submitted the design to the City as a part of its Application, at which time the Application, including the two-dimensional images therein, became the City's property.  (UMF 31, 40).  It was almost two years later, on ████████████ when the Addendum was executed, that ████████████ ████████████████ (UMF 70).  But by that time, Studio had given the City its purported copyright in the two-dimensional images, and no intellectual property therein could have been transferred as a matter of law.  New Tradition therefore lacks standing to maintain its instant copyright infringement claims.

### 3.   **Equitable Estoppel**

New Tradition should also be barred by equitable estoppel from asserting its alleged copyright registration against Rittersbacher. For an equitable estoppel defense to a copyright infringement claim: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

Applying this standard here, it is evident that NT should be estopped:

(1)   New Tradition knew that: (i) by virtue of submitting the Application to the City, the Application would become the City's property; (ii) the property owner owned any rights to a concept award once granted; and (iii) the property owner would need to disclose the existence of land use entitlements in connection with any future sale, including the Concept Award and Application;

(2) With knowledge of these facts, New Tradition submitted the Application to the City, intending that it by relied upon by the City and Rittersbacher;

(3) Rittersbacher was ignorant of the alleged copyright registration and New Tradition's intention to assert the registration; and,

(4) Rittersbacher relied on New Tradition's representation that the Application had become the property of the City of West Hollywood to its detriment, including by fully and fairly disclosing the Subject Property's land use entitlements to prospective purchasers in accordance with the law.

Thus, summary judgment is appropriate on equitable estoppel grounds. A contrary holding would enable copyright holders to burden a property with land use entitlements and then sue property holders for disclosing information about a property that is pertinent to the metes and bounds of the property at issue.

### 4. Rittersbacher's Use of the Application Constitutes Fair Use

If New Tradition does in fact own a copyright in the "work" and this action is not in fact barred by waiver, a lack of standing or copyright misuse, Rittersbacher's use of the Application constitutes "fair use." *See* 17 U.S.C. § 107.[4]

In determining whether the use made of an original work is a "fair use," courts balance the following factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003). The analysis of these factors "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). The factors should not "be treated in isolation one from another.

---

[4] "Where material facts are not in dispute, fair use is appropriately decided on summary judgment." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003).

All are to be explored, and the results weighed together..." *Id*. at 578.

### a.   Purpose and Character of the Use

The "central purpose" of the first factor is to see "whether and to what extent the new work is transformative." *Campbell*, *supra,* 510 U.S. at 579. "Works of this type 'lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more "transformative" the new work, the less will be the significance of other factors.' " *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (quoting *Campbell*, 510 U.S. at 579). To determine whether a use is transformative, courts look to whether "the new work ... adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Id.*

Here, Rittersbacher's *only* use of the copyrighted work was to include the Application in the Data Room, along with other documents that it collected evidencing each of the land use entitlements tied to the Subject Property. (UMF 57). Rittersbacher has a common law duty to disclose relevant information to potential purchasers of the Subject Property, such as the Concept Award and Application, along with pending disputes concerning the Property. *See Assilzadeh v. Cal. Federal Bank*, 82 Cal.App.4th 399, 410-411 (seller has a duty to disclose facts that have a significant and measurable effect on value to the buyer). The two-dimensional drawings were also shared under a Confidentiality and Non-Disclosure Agreement, which prohibited prospective purchasers from disclosing or duplicating any of the information contained in the Data Room. (UMF 59).

This is a classic transformative use. The purpose and character of the Application was to disclose a potential design for a digital billboard. The purpose and character of Rittersbacher's use was to disclose necessary information to prospective real estate buyers. *See, e.g.*, *Seltzer*, 725 F.3d at 1176–77 (use of original art as a "component" of a larger video was fair use, where the video conveyed "new information" that was "plainly distinct from those of the original piece"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–819 (9th Cir. 2003) (thumbnails of photographs used for commercial search engine were

transformative because use served a different function—improving access to information on the internet versus artistic expression"). This factor thus weights strongly in favor of Rittersbacher.

### b.    Nature of the Copyrighted Work

"Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." *Kelly*, *supra,* 336 F.3d at 820. At the same time, "[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Id.*

Here, New Tradition published its Application by submitting it to the City. (UMF 31). Through the application process, the Application became the property of the City and became available to the public by way of public records requests. (UMF 35, 37, 40).

New Tradition's copyright is directed to two-dimensional drawings depicting the design for a digital billboard. (UMF 76-78). Billboards are useful articles, which are used to hold and display advertisements. *See, e.g.*, *Stanislawski v. Jordan*, 337 F. Supp. 2d 1103, 1111 (E.D. Wis. 2004) ("The frames at issue in this case are clearly 'useful articles' within the meaning of the statute; frames are used to hold and display photographs."). Drawings for a billboard are at best only slightly creative works. Accordingly, this factor weighs in favor of Rittersbacher.

### c.    Amount and Substantiality of Portion Used

"While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820. "However, the extent of permissible copying varies with the purpose and character of the use. If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Id.* at 820–21.

Here, Rittersbacher was required to disclose the entirety of the Application in order to comply with its common law duties to disclose relevant information to potential purchasers of the Subject Property, such as the Subject Property's land use entitlements and pending disputes concerning the Property. Accordingly, this factor is at best neutral.

### d. Effect of the Use Upon The Potential Market For Or Value of the Copyrighted Work

This factor considers "the extent of market harm caused by the particular actions of the alleged infringer [and] also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell, supra,* 510 U.S. at 590. Where the use does not substitute for the original and serves a "different market function," such factor weighs in favor of fair use. *Seltzer*, *supra,* 725 F.3d at 1179.

Rittersbacher's use does not in any way supplant the need for New Tradition's originals. If anything, Rittersbacher's use *enhances* the market for the licensing of New Tradition's copyright, by informing potential purchasers of the Subject Property's land use entitlements, which include the Concept Award. Thus, the fourth fair use factor weighs strongly in Rittersbacher's favor. *See, e.g.*, *Kelly*, *supra,* 336 F.3d at 821 (fourth factor weighed in defendant's favor where "the search engine would guide users to Kelly's web site rather than away from it").

Because two of the fair use factors weigh strongly in Rittersbacher's favor, one weighs slightly in Rittersbacher's favor, and one is neutral, summary judgment is appropriate. *Id.* (affirming district court's grant of summary judgment).

### 5. Copyright Misuse

"Copyright misuse is a judicially crafted affirmative defense to copyright infringement" designed to combat the impermissible extension of a copyright's limited monopoly. *Apple Inc. v. Psystar Corp.,* 658 F.3d 1150, 1157 (9th Cir. 2011). It "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright [Act]." *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516, 520 n.9 (9th Cir. 1997). The purpose of the defense is to prevent copyright holders "from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Apple*, 658 F.3d at 1157.

Here, Rittersbacher's use of New Tradition's copyrighted work was necessary to make a factual statement about the Subject Property to prospective purchasers. New Tradition is now misusing its copyright to extort from Rittersbacher a portion of the proceeds generated by Rittersbacher's sale of the Subject Property after it and Osik's attempts to leverage Osik's wrongful possession failed. This is readily apparent from New Tradition's inclusion in the FAC of Rittersbacher's sales brochures and website. Both indirectly reference the Concept Award (which New Tradition does not own) but contain no copyrighted material from the Application whatsoever. (UMF 60-63).

New Tradition's copyright did not grant it the ability to control or dictate the terms of Rittersbacher's sale of the Subject Property, nor any entitlement to any proceeds generated by the sale, including but not limited to Rittersbacher's assignment of the Concept Award. New Tradition should not be permitted to leverage its copyright on aspects of the Application to obligate Rittersbacher to pay a fee for merely mentioning the existence of the Concept Award and Application and for copying and distributing *public records* in which New Tradition's allegedly copyrighted work is embedded.

Courts have found copyright misuse in similar circumstances, such as where a plaintiff attempts to use copyright to leverage rights that it would not otherwise have. *Omega S.A. v. Costco Wholesale Corp.*, No. CV 04-05443 TJH, 2011 WL 8492716, at *2 (C.D. Cal. Nov. 9, 2011) (granting summary judgment for defendants where "a purpose of the copyrighted Omega Globe Design was to control the importation and sale of its watches containing the design, as the watches could not be copyrighted"); *Religious Tech. Ctr. v. Lerma*, No. CIV.A. 95-1107-A, 1996 WL 633131, at *12 (E.D. Va. Oct. 4, 1996) (noting copyright misuse defense is applicable "where the plaintiff attempted to restrain defendant from using material over which the plaintiff itself had no rights").

## IV.   CONCLUSION

For the foregoing reasons, Rittersbacher respectfully that the Court grant summary judgment in favor of Rittersbacher on the issues presented herein.

//

Respectfully submitted,

DAPEER, ROSENBLIT & LITVAK, LLP

Dated: May 22, 2023

By: _____ /s/ Eric P. Markus _____
           William Litvak
           Eric P. Markus
Attorneys for Defendant,
Rittersbacher Sunset, LLC