UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW TRADITION MEDIA, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RITTERSBACHER SUNSET, LLC, a California limited liability company; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 2:22-cv-08670-WLH-AS<br><br>**ORDER RE PLAINTIFF'S [51] AND DEFENDANT'S [48] CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court are Plaintiff's and Defendant's Cross-Motions for Partial Summary Judgment. (Docket Nos. 48, 51-1).

I. **BACKGROUND**

This is a copyright case. At all relevant times prior to February 1, 2023, Defendant Rittersbacher Sunset, LLC ("Rittersbacher") owned the property at 8300 W. Sunset Boulevard in West Hollywood, California ("8300 Sunset"). (Rittersbacher Statement of Genuine Disputes of Material Fact ("Rittersbacher SDF"), Docket No. 67-

3, ¶ 1). Through a series of leases, subleases, and assignment agreements, a company called Osik Media, LLC ("Osik") began operating a billboard located on a corner of the 8300 Sunset property in 2010. (*Id.* ¶¶ 3–11). In 2017, Osik entered into a license agreement with Plaintiff New Tradition Media, LLC ("New Tradition"), under which New Tradition had the right to display advertisements on the billboard. (*Id.* ¶¶ 14–15).

In April 2019, the City of West Hollywood (the "City") opened applications for a "design excellence" program for advertising signs. (*Id.* ¶¶ 24–25). Applicants would submit site plans and renderings to a screening committee. (*Id.* ¶ 27). The highest scored projects would receive a "Concept Award" that authorized the applicant to apply to the City to construct the project. (*Id.* ¶ 28). In September 2019, New Tradition and Osik engaged Studio AR+D Architects, Inc. ("Studio AR+D") to design a new digital billboard at 8300 Sunset for submission in the program. (*Id.* ¶ 29). In November 2019, Studio AR+D submitted the site plan and renderings (the "Submission Materials") on behalf of New Tradition and Osik. (*Id.* ¶ 31). The City had provided a guide for submissions in the program (the "Submission Guide"), which stated that "[a]ll screening applications will become the property of the City when received. Information contained in the screening applications may be subject to disclosure under the California Public Records Act." (*Id.* ¶ 40). In submitting the materials, the lead architect on the project signed a form confirming, under penalty of perjury, that he "read the [Submission Guide] and will adhere to the guidelines and requirements included in it[.]" (*Id.* ¶ 37).

In February 2021, Rittersbacher hired CBRE, a real estate firm, to list and market 8300 Sunset. (*Id.* ¶ 53). Soon after, on March 26, 2021, the City granted a Concept Award to 8300 Sunset based on Studio AR+D, New Tradition, and Osik's Submission Materials. (*Id.* ¶ 44). Rittersbacher had no involvement in obtaining the Concept Award. (*Id.* ¶ 41). The Concept Award is a land use entitlement that runs with the land at 8300 Sunset. (*Id.* ¶¶ 48–49). After the Concept Award issued, the value of 8300 Sunset increased, from $77 million to $120 million. (*See* New Tradition Response to Statements of Genuine Dispute of Material Fact ("NT SDF"), Docket No. 86-2 ¶¶ 21–

2

22).

CBRE began publicly marketing 8300 Sunset in October 2021. (Rittersbacher SDF ¶ 54). As part of its marketing efforts, CBRE created a website for 8300 Sunset with a data room containing documents pertaining to the property (the "Data Room"). (*Id.* ¶¶ 56–57). Access to the Data Room required signing a Confidentiality and Non-Disclosure Agreement (the "Data Room Access Agreement"). (*Id.* ¶ 59). Among other documents, the Data Room contained a copy of the Concept Award. (*Id.* ¶ 57). In late October 2021, CBRE hosted a "Signage Webinar" to discuss the Concept Award at 8300 Sunset. (NT SDF ¶ 14). The invitation to the webinar, which CBRE sent to "hundreds" of people, included links to the 8300 Sunset website and to the Data Room Access Agreement.[1] (*Id.*). The evidence shows that third parties, including the eventual purchaser of 8300 Sunset, accessed the Submission Materials in the Data Room. (*Id.*).

On November 5, 2021, New Tradition, Osik, and Studio AR+D signed an Addendum to their original engagement agreement (the "Addendum"). (Rittersbacher SDF ¶ 70). The Addendum stated that Studio AR+D, New Tradition, and Osik retained the copyright in the Digital Billboard. (Hou Decl., Exh. 2, Docket No. 50-2 at 1). The Addendum was backdated to October 31, 2019, and its stated purpose was to "clarify and make a revision to" the original Agreement. (*Id.*).

On December 28, 2021, the Executive Vice President at CBRE wrote to a potential purchaser, forwarding a "signage submission application" that she had received from "the owner" of 8300 Sunset. (Decl. of Alicia Y. Hou ("Hou Decl."), Exh. 7, Docket No. 50-7). The CBRE executive wrote to the potential purchaser that the owner's attorney "advised them that the signage presentation is proprietary, owned by

---

[1] Rittersbacher disputes that the email blast contained a direct link to the Data Room, but does not dispute that it contained a link to the "Data Room Access Agreement" and to the 8300 Sunset website, from which the Data Room was accessible. (NT SDF ¶ 12).

3

the architect and not public record." (*Id.*). The potential purchaser questioned whether the application package might actually be publicly available. (*Id.*). The CBRE executive forwarded the potential purchaser's email to executives at Rittersbacher, asking them for a proposed response to the purchaser. (*Id.*). The next day, the managing member of Rittersbacher responded to CBRE that Rittersbacher received "confirmation that the attached document is in the public record and can be shared," and asked CBRE to "post it to the data room and send an alert in addition to sharing it with the buyer." (*Id.*). CBRE posted the Submission Materials in their entirety to the Data Room. (NT SDF ¶ 10).

On July 11, 2022, New Tradition, Osik, and Studio AR+D filed an application for copyright protection of the Submission Materials with the United States Copyright Office. (NT SDF ¶ 7; Decl. of Kanika Corley in Support of Mot. for Summ. J. ("Corley Decl."), Docket No. 53-20 ¶ 2; Exh. R, Docket No. 53-21). The next day, the Copyright Office responded, explaining that portions of the Submission Materials could not be copyrighted, but that the technical drawings and renderings could be protected as "2-D artwork." (Corley Decl. ¶ 3; Exh. S, Docket No. 53-22). On November 2, 2022, the Copyright Office issued a Certificate of Registration for the "Digital Billboard," listing New Tradition, Osik, and Studio AR+D as the "claimants." (Corley Decl. ¶ 5; Exh. V, Docket No. 53-25). The certificate reflects registration of "2-D artwork" and "technical drawings." (*Id.*).

On October 14, 2022, Rittersbacher's representative emailed a copy of the Submission Materials to a third party. (*See* Hou Decl., Exh. 10, Docket No. 50-10; Reply Decl. of Kanika Corley ("Corley Reply Decl."), Docket No. 87-2 ¶ 5, Exhibit AAA).

On November 16, 2022, New Tradition sent Rittersbacher a cease-and-desist letter, informing Rittersbacher that it and CBRE were likely infringing New Tradition's copyright. (NT SDF ¶ 17). New Tradition filed this suit on November 29, 2022. (*Id.* ¶ 20). Rittersbacher's sale of 8300 Sunset closed on January 31, 2023, and Rittersbacher

assigned its interest in the Concept Award to the new owner of 8300 Sunset. (Rittersbacher SDF ¶ 84). New Tradition filed the First Amended Complaint on March 2, 2023. (*Id.*).

Both parties now move for partial summary judgment. Both Rittersbacher and New Tradition seek summary judgment on New Tradition's First Cause of Action for direct infringement, Second Cause of Action for contributory infringement, and Third Cause of Action for vicarious infringement, as well as Rittersbacher's Seventh Affirmative Defense of fair use. (Rittersbacher Mot. for Summ. J., Docket No. 48 at 2; New Tradition Notice of Mot. for Summ. J., Docket No. 51 at 1–2). Rittersbacher also moves for summary judgment on its Tenth and Twenty-Third Affirmative Defenses of waiver and its Eighth Affirmative Defense of estoppel, and the affirmative defense of copyright misuse.[2] New Tradition requests summary judgment on Rittersbacher's Twelfth Affirmative Defense of license. (*Id.*).

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Where the nonmoving party will have the burden of proof at trial, as here, the movant can prevail merely by pointing out that there is an absence of evidence to

---

[2] The Court notes that Rittersbacher did not raise the affirmative defense of copyright misuse in its Answer to the First Amended Complaint. (*See generally* Answer, Docket No. 27). The Ninth Circuit has held, however, that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). Because New Tradition has not claimed prejudice, the Court considers the copyright misuse defense.

5

support the nonmoving party's case. *Id.* The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Where the record "taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, it is the nonmoving party's obligation to produce factual predicates from which an inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

### III. DISCUSSION

#### A. **Copyright Infringement**

##### 1. *Threshold Requirements*

To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) copying of original elements of the work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Rittersbacher takes issue with both prongs.

###### a) *Ownership of a Valid Copyright*

"[I]f a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010) (citing 17 U.S.C. § 410(c)), *abrogated on other grounds by Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019). That includes the fact of ownership as stated in the certificate. *See, e.g.*, *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1194 (C.D. Cal. 2005) ("A certificate of registration is prima facie

6

evidence of ownership of a copyright."). Such a certificate "shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (quoting *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3d Cir. 1990)).

The copyright certificate for the Digital Billboard lists the "Copyright Claimaints" as New Tradition, Studio AR+D, and Osik. (Corley Decl., Exh. V., Docket No. 53-25). This constitutes prima facie evidence that New Tradition is a joint owner of the copyright.

Rittersbacher argues, however, that New Tradition is not and "has never been a legal or beneficial owner" of the copyright. (*See* Rittersbacher Mot. for Summ. J. at 21). The City's Submission Guide for the Concept Award application stated that "[a]ll screening applications will become the property of the City when received. Information contained in the screening applications may be subject to disclosure under the California Public Records Act." (Rittersbacher SDF ¶ 40; Decl. of William Litvak, Exh. 3, Docket No. 48-17 at 10). When Studio AR+D submitted the Submission Materials to the City, the lead architect on the project signed a form confirming, under penalty of perjury, that he "read the [Submission Guide] and will adhere to the guidelines and requirements included in it[.]" (Rittersbacher SDF ¶ 37). According to Rittersbacher, these two documents, taken together, show that Studio AR+D transferred copyright ownership to the City when it presented the Submission Materials in November 2019. (Rittersbacher Mot. for Summ. J. at 21). Studio AR+D, Osik, and New Tradition did not execute the Addendum affirming joint ownership in the copyright until November 5, 2021, though it was backdated to October 31, 2019. (*Id.*; *see also* Rittersbacher SDF ¶¶ 70, 71). By the time they executed the Addendum, Rittersbacher argues, it was too late: the City exclusively owned the copyright, and the Addendum affirming joint ownership could have no effect. (Rittersbacher Mot. for Summ. J. at 21). Without owning the copyright, says Rittersbacher, New Tradition does not have standing to sue. (*Id.*).

Section 204(a) of the Copyright Act provides that "[a] transfer of copyright

7

ownership … is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Such a writing "must ensure that the author will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 356–57 (9th Cir. 1994) (quotations omitted). In other words, "the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999). "While it is not required that the writing explicitly mention 'copyright' or 'exclusive rights,' the better practice is that it should." *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1159 (S.D.N.Y. 1996).

The Submission Guide and the signed application do not meet the requirements of § 204(a). Neither document mentions or even hints at a copyright transfer. The Submission Guide merely states that the Submission Materials may be disclosed under the Public Records Act; it does not evidence any intent by the City to obtain exclusive rights to the Submission Materials. Nor does the signature of Studio AR+D's architect on the application, affirming that he had read and would conform to the requirements of the Submission Guide, demonstrate any intent to transfer ownership of the copyright. For these reasons, the Court interprets the Submission Guide's plain terms to mean only that the City owns the specific file submitted for the competition and that the City may have to produce a copy of such file pursuant to a public records request. The language does not evince an intent by the City to obtain rights above and beyond that.

Further evidence shows the that the City did not intend to establish copyright ownership by including language regarding "ownership" in the Submission Guide. An email to New Tradition's counsel from the Senior Contract Planner for the City stated that, according to the Director of West Hollywood's Planning and

8

Development Services Department, the language in the Submission Guide meant that "the applications that were submitted for the design awards are subject to [the Public Records Act]."[3] (Decl. of Lisa Kolieb ("Kolieb Decl."), Exh. ZZ, Docket No. 71-3). The language in the Submission Guide, then, gave applicants notice of the City's potential obligation to disclose the applications under the Public Records Act. This is not equivalent to establishing copyright ownership in the applications.

The Ninth Circuit has said that "[i]f the parties really have reached an agreement, they can satisfy § 204(a) with very little effort." *Radio Television Espanola*, 183 F.3d at 929. That is not the case here. Rittersbacher has not satisfied its burden to show that the contents of the copyright certificate, which lists New Tradition as a joint owner of the copyright, are invalid. New Tradition therefore fulfills the first threshold requirement of copyright infringement.

### b) Copying

It is clear that Rittersbacher transmitted to CBRE and third parties a direct copy of the Submission Materials containing New Tradition's copyrighted work.[4] It is also

---

[3] "[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

[4] Rittersbacher states that "the record is devoid of evidence that Rittersbacher ever distributed the Submission Materials to any third parties." (Rittersbacher Opp'n to Mot. for Summ. J., Docket No. 72 at 16). Rittersbacher made this statement before New Tradition submitted direct evidence showing that Rittersbacher's representative transmitted a copy of the Submission Materials to a third party on October 14, 2022. (*See* Hou Decl., Exh. 10, Docket No. 50-10; Corley Reply Decl., Docket No. 87-2 ¶ 5, Exhibit AAA). The copy of the Submission Materials attached to the email was apparently inadvertently omitted from New Tradition's initial motion papers. (Corley Reply Decl. ¶ 5). Evidence submitted previously, however, also shows that Rittersbacher transmitted a "signage submission application" to CBRE, which Rittersbacher had been advised was "proprietary, owned by the architect and not in the public record." (Hou Decl., Exh. 7, Docket No. 50-7). The next day, the managing member of Rittersbacher wrote to CBRE that Rittersbacher received "confirmation that the attached document is in the public record and can be shared," and asked CBRE to "post it to the data room and send an alert in addition to sharing it with the buyer." (*Id.*). Rittersbacher does not deny that CBRE, in turn, posted the Submission Materials in the Data Room. (Rittersbacher SDF ¶¶ 57, 58). There is no genuine dispute here that

9

undisputed that the Submission Materials CBRE posted in the Data Room were exact copies of those submitted to the City. (Rittersbacher SDF ¶¶ 57, 58).

Rittersbacher argues that it did not "copy" New Tradition's work in a legal sense because it did not violate New Tradition's exclusive rights. "The word 'copying' is shorthand for the infringing of any of the copyright owner's [six] exclusive rights, described at 17 U.S.C. § 106." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989); *see also Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (quoting *S.O.S., Inc.*). As relevant to artwork and technical drawings such as those at issue here, a copyright owner has the exclusive rights to reproduce the copyrighted work, create derivative works, distribute copies of the work, and display the copyrighted work publicly. 17 U.S.C. § 106 (1)–(3), (5).

At the least, Rittersbacher violated New Tradition's right to distribute its work. Rittersbacher transmitted a copy of the work to CBRE over email. (Hou Decl., Exh. 7, Docket No. 50-7). Through its representative, it also transmitted a copy of the Submission Materials to a third party. (*See* Hou Decl., Exh. 10, Docket No. 50-10; Corley Decl., Docket No. 87-2 ¶ 5, Exhibit AAA). This was a violation of New Tradition's exclusive right to distribute its work. *See, e.g.*, *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1105 (E.D. Cal. 2006) (granting summary judgment for plaintiff where defendant transmitted email attachments containing "verbatim copying of plaintiff's files"); *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, No. 8:08-CV-1227-T-30EAJ, 2009 WL 10670735, at *2 (M.D. Fla. Nov. 25, 2009) (direct infringement established where defendant sent email attachments containing copyrighted material); *Therapeutic Rsch. Fac. v. NBTY, Inc.*, 488 F. Supp. 2d 991, 995 (E.D. Cal. 2007) (denying motion to dismiss where defendant pasted text from copyrighted work into an email and sent emails to unauthorized users).

Additionally, and relevant to New Tradition's claim for contributory

---

Rittersbacher distributed the Submission Materials.

10

infringement, CBRE infringed New Tradition's copyright by violating New Tradition's exclusive right to display its works publicly. "'Display' means to show a copy of a work, either directly or by means of a film, slide, television image, or any other device or process." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017) (quotation omitted). CBRE uploaded the Submission Materials to the Data Room on the 8300 Sunset website. (NT SDF ¶ 10). Though access to the Data Room required a party to sign a Confidentiality and Non-Disclosure Agreement, there is no evidence that the Data Room was inaccessible to members of the general public. (Rittersbacher SDF ¶ 59). By uploading the copyrighted work to a publicly viewable website, CBRE violated New Tradition's right to publicly display its work.

New Tradition has carried its burden to establish both prongs of copyright infringement are fulfilled.

### 2. *Direct Infringement*

New Tradition seeks to hold Rittersbacher liable on a direct infringement theory. "[D]irect infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10*, 847 F.3d at 666. Rittersbacher does not argue that its transmission of the Submission Materials was unintentional. It is therefore liable for direct infringement.

### 3. *Contributory Infringement*

New Tradition also seeks to hold Rittersbacher liable for contributory infringement. "A party engages in contributory copyright infringement when it '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019) (quoting *VHT, Inc. v. Zillow Grp*., 918 F.3d 723, 745 (9th Cir. 2019)). As discussed above, CBRE infringed New Tradition's copyright when it uploaded the Submission Materials to the Data Room. CBRE did so at Rittersbacher's direction. (NT SDF ¶ 10). Because Rittersbacher induced CBRE to upload the infringing materials, it is liable for contributory infringement.

### 4. *Vicarious Infringement*

Finally, New Tradition claims that Rittersbacher vicariously infringed its copyright. "To prevail on a claim for vicarious infringement, a plaintiff must prove the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10*, 847 F.3d at 673. As discussed above, the first prong is satisfied here. Regarding the second prong, the "essential aspect" is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis omitted). "If the infringing material is 'just an added benefit,' rather than a draw," however, there is no direct financial benefit. *Erickson Prods.*, 921 F.3d at 829–30.

To establish that Rittersbacher financially benefited from the infringement, New Tradition points to evidence showing that the value of 8300 Sunset increased drastically, from $77 million to $120 million, after the Concept Award issued. (*See* New Tradition Mot. for Summ. J. at 20–21; NT SDF ¶¶ 21–22). It also points out that Rittersbacher and CBRE heavily emphasized the Concept Award's ability to generate income in its marketing for 8300 Sunset, through emails and a webinar focused on the Concept Award. (NT SDF ¶¶ 12, 14). Finally, it shows that the ultimate purchaser viewed the Submission Materials, among other materials in the Data Room. (Hou Decl., Exh. 22, Docket No. 50-22).

It is clear that the Concept Award added value to 8300 Sunset. Nevertheless, the Concept Award and the Submission Materials are distinct. While New Tradition owns the copyright in the latter, it does not own the Concept Award. (Rittersbacher SDF ¶ 48). Rather, the Concept Award runs with the land at 8300 Sunset. (*Id.* ¶ 49). Rittersbacher had every right to market the Concept Award in selling 8300 Sunset, and the Concept Award undoubtedly was a draw for potential purchasers. But the evidence

12

does not clearly show that the availability of the copyrighted artworks and technical drawings themselves, as opposed to more general information about the Concept Award, led to the purchase of 8300 Sunset. In other words, there is no evidence in the record showing that the availability of the copyrighted work was more than "just an added benefit" for the eventual purchaser. Because there is a genuine issue of material fact here, the Court cannot hold Rittersbacher liable for vicarious infringement, but it also cannot say that Rittersbacher did not receive a financial benefit from its infringing activity. Both motions are therefore **DENIED** as to vicarious infringement.

### B. Affirmative Defenses

The parties move for summary judgment on a total of six of Rittersbacher's affirmative defenses.

#### 1. Fair Use

Both Rittersbacher and New Tradition seek summary judgment on Rittersbacher's affirmative defense of fair use. The fair use factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

##### a) Purpose and Character of the Use

This factor involves evaluating "whether [the] use is of a commercial nature" and "whether and to what extent the new work is 'transformative.'" *Id.* at 579. Rittersbacher argues that its purpose in distributing the Submission Materials was informational and not commercial. It claims that it "has a common law duty to disclose relevant information to potential purchasers of [8300 Sunset], such as the Concept Award and Application[.]" (Rittersbacher Mot. for Summ. J. at 23).

As discussed concerning vicarious infringement, however, the Concept Award and the Submission Materials are distinct. Rittersbacher could have fulfilled any duty to disclose information affecting the value of 8300 Sunset by disclosing the existence of the Concept Award. Rittersbacher does not explain why it needed to distribute the Submission Materials specifically or why it instructed CBRE to display the materials to anyone who accessed the 8300 Sunset website. Further, the email blast and webinar advertising the financial potential of the Digital Billboard demonstrates that Rittersbacher distributed the copyrighted work to potential buyers for a commercial purpose. (NT SDF ¶ 14). This factor weighs against a fair use finding.

    b)  *Nature of the Copyrighted Work*

"Works that are creative in nature are 'closer to the core of intended copyright protection' than are more fact-based works." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001) (quoting *Campbell*, 510 U.S. at 586). The copyrighted artworks and technical drawings are creative works. This factor also weighs against a fair use finding.

    c)  *Amount and Substantiality of the Use*

The Submission Materials that Rittersbacher distributed contained the entirety of the copyrighted work. This factor weighs against a fair use finding.

    d)  *Effect of the Use Upon the Market for the Work*

On this factor, a court must consider "the extent of market harm caused by the particular actions of the alleged infringer." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013). Rittersbacher argues that its use did not harm the market for the original because "[i]f the subsequent purchaser [of 8300 Sunset] used the drawings to submit plans for the digital billboard to the City, they may need to seek approval from [New Tradition] to do so." (Rittersbacher Reply, Docket No. 90 at 12). This factor is neutral.

Taking these factors together, Rittersbacher's distribution of the copyrighted work was not "fair use." Rittersbacher's motion is **DENIED** and New Tradition's

motion is **GRANTED** as to the affirmative defense of fair use.

      2.  *Waiver*

   Rittersbacher requests summary judgment on its affirmative defense of waiver. Waiver or abandonment of a copyright "must be manifested by some overt act indicating an intention to abandon that right." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998). Rittersbacher argues that New Tradition waived its copyright when it submitted the Submission Materials to the City. (Rittersbacher Mot. for Summ. J. at 19). As discussed above, New Tradition's submission did not demonstrate an intent to abandon the copyright in the Submission Materials. Rather, it demonstrated New Tradition's acknowledgement that the Submission Materials might be subject to a Public Records Act request. Rittersbacher's motion is **DENIED** on Rittersbacher's affirmative defense of waiver.

      3.  *License*

   New Tradition requests summary judgment on Rittersbacher's affirmative defense of license. "An implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (cleaned up). Rittersbacher argues that New Tradition granted the City an implied license when it submitted the Submission Materials, and that New Tradition thereby granted Rittersbacher the same license "by extension." (Rittersbacher Opp'n to Mot. for Summ. J., Docket No. 72 at 24). This is not how implied licenses work. *See, e.g.*, *McIntosh v. N. California Universal Enterprises Co.*, 670 F. Supp. 2d 1069, 1090 (E.D. Cal. 2009) (no implied license in similar circumstance wherein defendant "appear[ed] to attempt to step into [the licensee's] shoes to transpose itself as the licensee"). Additionally, and again, there is no evidence that New Tradition intended anyone to distribute its work. New Tradition's motion is **GRANTED** as it pertains to Rittersbacher's implied license defense.

####    4.     *Public Domain*

Rittersbacher did not assert a public domain defense in its Answer, but New Tradition seeks summary judgment on this topic because Rittersbacher raised the argument at a recent hearing. (*See* New Tradition Notice of Mot. for Summ. J., Docket No. 51 at 2). The Court considers this issue because it underlies many of Rittersbacher's arguments. (*See, e.g.*, Rittersbacher Mot. for Summ. J. at 19 (stating that "Rittersbacher's sharing of a public record cannot constitute copyright infringement")).

The court in *McIntosh*, 670 F. Supp. 2d 1069, faced facts similar to those here. In that case, plaintiff accused several defendants, including a municipality, of creating a new subdivision map based on plaintiff's own tentative subdivision map and other copyrighted technical drawings. *Id.* at 1084. The defendants argued that they could not have infringed plaintiff's copyright because plaintiff submitted the drawings to the city pursuant to the municipal code. *Id.* at 1091. The court held, however, that the submission of the drawings for "public disclosure and review" did not obviate the plaintiff's copyright in the drawings. *Id.* As the court put it, "[d]efendants fail[ed] to satisfy that such public disclosure and review constitutes [plaintiff's] intent that [the city] copy and distribute [plaintiff's] work in that, *pursuant to defendants' way of thinking, any protected work subject to public disclosure would lose its protected status.*" *Id.* (emphasis added).

*McIntosh* makes the difference between "public domain" and "public availability" very clear. New Tradition's Submission Materials were available through a Public Records Act request, but that does not mean they are in the public domain. Accordingly, New Tradition's motion is **GRANTED** on Rittersbacher's public domain defense.

####    5.     *Estoppel*

Rittersbacher also requests summary judgment on its estoppel defense. To establish estoppel, Rittersbacher must show that (1) New Tradition "kn[e]w the facts"; (2) New Tradition "intend[ed] that [its] conduct shall be acted on"; (3) Ritterbacher was

16

"ignorant of the true facts"; and (4) Rittersbacher relied on New Tradition's conduct "to [its] injury." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.1960) (internal citation omitted). Rittersbacher argues that New Tradition "represent[ed] that the [Submission Materials] had become the property of the City" and that Rittersbacher relied on that representation to its detriment. (Rittersbacher Mot. for Summ. J. at 22). Again, nothing in the record shows that New Tradition made any such representation. But even if it had, there is certainly no evidence showing that New Tradition intended that Rittersbacher rely on the Submission Materials' public availability in selling 8300 Sunset. Rittersbacher's motion is **DENIED** as to its affirmative defense of estoppel.

    6. *Copyright Misuse*

Finally, Rittersbacher requests summary judgment on the defense of copyright misuse. That defense "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A&M Recs.*, 239 F.3d at 1026. Rittersbacher argues that its "use of New Tradition's copyrighted work was necessary to make a factual statement about the Subject Property to prospective purchasers" and that "New Tradition is now misusing its copyright to extort from Rittersbacher a portion of the proceeds generated by Rittersbacher's sale of" 8300 Sunset. (Rittersbacher Mot. for Summ. J. at 26).

This argument is unsuccessful. As discussed above, while Rittersbacher's disclosure of the existence of the Concept Award may have been necessary, Rittersbacher has not shown that its *use* of New Tradition's copyrighted work was necessary. Rittersbacher also has not shown, for that matter, that Rittersbacher requested permission from New Tradition to use the Submission Materials and New Tradition refused. "A plaintiff's 'enforcement of its copyrights does not constitute copyright misuse.'" *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006) (quoting *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356, 370 (E.D.Va.1994)). New Tradition is not

17

"extorting" Ritterbacher by enforcing its copyright in the Submission Materials. Rittersbacher's motion is **DENIED** on its affirmative defense of copyright misuse.

### C. New Tradition's Request for Declaratory Judgment

Rittersbacher moves for summary judgment in its favor on New Tradition's declaratory judgment cause of action. (Rittersbacher Mot. for Summ. J. at 2). The Court **DENIES** this request.

### D. Discovery

Finally, the Court briefly addresses discovery. Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d). Along with the Opposition to New Tradition's Motion, as well as twenty-five exhibits in support of the Opposition, counsel for Rittersbacher attested that Rittersbacher needed further discovery to support its affirmative defenses and to dispute several of New Tradition's "undisputed" facts. (Decl. of William Litvak, Docket No. 72-16 ¶¶ 20–21). The affidavit did not specify which additional facts Rittersbacher hoped to discover. (*See id.*). Counsel for Rittersbacher again raised the issue at oral argument without specifying any facts it hoped to discover. "Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Cont'l Mar. of San Francisco, Inc. v. Pac. Coast Metal Trades Dist. Council, Metal Trades Dep't, AFL-CIO*, 817 F.2d 1391, 1395 (9th Cir. 1987) (citing *Hall v. State of Haw.*, 791 F.2d 759, 761 (9th Cir.1986)). Because Rittersbacher did not fulfill this burden, deferral of the Court's ruling on New Tradition's Motion is not merited.

## IV. CONCLUSION

New Tradition has established that it is the owner of a valid copyright and that

Rittersbacher directly and contributorily infringed that copyright. New Tradition's motion is therefore **GRANTED** and Rittersbacher's motion is **DENIED** on New Tradition's First and Second Causes of Action. Both motions are **DENIED** on the Third Cause of Action for vicarious infringement. As for Rittersbacher's affirmative defenses: Rittersbacher's motion is **DENIED** and New Tradition's motion is **GRANTED** on Rittersbacher's Seventh Affirmative Defense of fair use; Rittersbacher's motion is **DENIED** as to its Tenth and Twenty-Third Affirmative Defenses of waiver, its Eighth Affirmative Defense of estoppel, and its affirmative defense of copyright misuse; and New Tradition's motion is **GRANTED** as to Rittersbacher's Twelfth Affirmative Defense of license.

**IT IS SO ORDERED.**

Dated: October 13, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

19